(Nos. 19201, 19586.

THE CITY OF CHICAGO, Appellee, *vs.* WILLIAM B. McCLUER
*et al.* Appellants.

*Opinion filed April 17, 1930—Rehearing denied June 6, 1930.*

FARMER, C. J., and DUNN, J., dissenting.   (See p. 638.)

LYMAN, ADAMS, BISHOP & DUPEE, URION, DRUCKER, REICHMANN & BOUTELL, BRYAN Y. CRAIG, McKINLEY & PRICE, BUTZ, VONAMMON & MARX, and STEINBRECKER & EATON, (HOWARD F. BISHOP, EUGENE H. DUPEE, and HENRY W. DRUCKER, of counsel,) for appellants.

SAMUEL A. ETTELSON, Corporation Counsel, and GOTTHARD A. DAHLBERG, (JOSEPH J. SULLIVAN, WILLIAM T. CRILLY, LEONARD F. CARMODY, and JOSEPH J. THOMPSON, of counsel,) for appellee.

Per CURIAM: We have here a consolidation of cases Nos. 19201 and 19586, involving the validity of proceedings under the Local Improvement act and judgments of the county court of Cook county confirming special assessments against and fixing awards to property owners for property taken for improving and widening North LaSalle street between Ohio street and North Clark street, in the city of Chicago. The records in both cases were filed in No. 19201 and most of the arguments upon the questions raised in both cases are contained in the briefs filed in that case, the briefs consisting of 300 pages. Most of the errors relied on by appellants are common to both cases, but a few are properly embraced in the argument filed in case No. 19586. After the court overruled legal objections appellants waived further controversy, and judgment was rendered confirming the assessment and for awards to the owners of property taken. Both cases were appealed to this court by property owners.

The total cost of the improvement of LaSalle street, which includes its widening fourteen feet on each side of the street, paving and sidewalk construction, is $6,595,896.

A great number of objections are made by appellants, the principal legal objections being (1) that the records of the board of local improvements are insufficient; (2) that there has been a fraudulent alteration and substitution of

records by appellee; (3) that the alleged ordinance was not recommended by the board of local improvements; (4) that there is excess condemnation; (5) that there was no transcription of the resolution prior to the public hearing; (6) that there is no provision for a complete improvement; (7) that the basic ordinance is void; (8) that the trial court was without jurisdiction and its orders void because the court was compensated in part by appellee, one of the parties to the litigation.

In making its *prima facie* case appellee offered in evidence, among other things, the ordinance passed December 23, 1924, for the widening of LaSalle street from Ohio street to Eugenie street; a certified copy of the ordinances passed March 25, 1925, for sidewalks; a certified copy of the ordinance passed March 25, 1925, for paving LaSalle street; the petition filed in the case of City of Chicago *vs.* Buzzell, for widening and improving LaSalle street from West Washington street to Ohio street; and the petition to condemn in the case at bar. Objections were made to all these, which were overruled.

A contention of appellants, urged by them as objectors below and renewed here, is, that the official records of the board of local improvements, in so far as they affect these proceedings, were fraudulently altered for a two-fold purpose: (1) To make it appear that the first resolution required by section 7 of the Local Improvement act (Cahill's Stat. 1929, par. 129,) was duly transcribed into the records of the board of local improvements; and (2) to make it appear that the ordinances for the widening and collateral improvements were considered and approved by the board of local improvements in the manner required by statute.

From the testimony of Louise Chandler, recording secretary of the board of local improvements of Chicago, whose duty it was to supervise the writing of the minutes of the board and record the minutes of its proceedings, it appears the board record covering the improvements in the

present proceeding had been introduced in evidence in a collateral case March 18, 1926, and that such record differed from the documents produced as the records in this case. It appears that for many years it had been the custom of the board to keep the record of its proceedings in two series of numbered volumes, a volume of one series being called "Minute Book" and a volume of the other series being called "Book of Resolutions and Estimates." The minute books contained the record of the proceedings of the board other than its resolutions and the adoption thereof and its estimates, while the books of resolutions and estimates contained the resolutions and estimates of the board, together with the record of their adoption. All of these records were open to public inspection. The so-called "Book of Resolutions and Estimates" contains a record of the date of the meetings of the board, the names of the members present, the votes taken on the adoption of resolutions and a copy of the resolution adopted, the record of each day's action on resolutions and estimates being signed by the clerk of the board. In their original form the minutes of the proceedings of the board of October 8, 1924, (the date when the first resolution required by section 7 of the Local Improvement act was claimed to have been adopted,) of December 19, 1924, and of December 23, 1924, at which meetings it is claimed the ordinance here in question was approved and recommended to the city council for passage, and of other meetings at which resolutions were adopted with reference thereto in the so-called "Minute Book," made no mention of the adoption of any resolution with reference to the improvement or of any ordinance providing for the improvement in question. Miss Chandler produced one of the volumes of the series of books of resolutions and estimates which contained a copy of the first resolution purporting to have been adopted December 8, 1924, together with the record of its adoption, and testified that the resolution had been duly transcribed therein. This volume

also contained records of December 19, 1924, and December 23, 1924, showing the adoption of a resolution approving and recommending to the city council the passage of the ordinance here in question. This volume, with reference to the meeting of the board of local improvements of December 8, 1924, contained the following:

"Resolution as document No. 12761. At a meeting of the board of local improvements of the city of Chicago, held on the 8th day of December, A. D. 1924, present, Messrs. Rydzewski, Robin, Eckland, Toman and Glackin, members of said board, the following resolution for the making of a local improvement, to-wit, widening north LaSalle street between West Ohio street and Eugenie street, was adopted and said resolution was ordered transcribed into the record of resolutions and estimates, volume 28, as document No. 12761:

*"Be it resolved by the board of local improvements of the city of Chicago,* That a local improvement be and the same is hereby originated, to be made by special assessment within the city of Chicago, State of Illinois, as follows, to-wit: That North LaSalle street be widened between West Ohio street and Eugenie street. The lots, blocks, tracts and parcels of land which will be taken for said improvement are as follows: [Then follows a description of the lots, pieces and parcels of land sought to be taken or damaged.]

*"Be it further resolved,* That Friday, the 19th day of December, A. D. 1924, at 10:00 o'clock A. M., in the council chamber, city hall, be and the same is hereby fixed as the time and place for the public consideration thereof.

Signed, EDWARD J. GLACKIN, *Secretary."*

The records in this volume as to the meetings of December 19 and December 23, 1924, were similar in form to the record of the meeting of December 8.

The changes and substitutions in the record here complained of were made by Miss Chandler in the minute book under authority of a resolution of the board adopted July 29, 1927, in accordance with the recommendation of the attorney for the board that the board take action authorizing such additions to or amplification of the record as may

be required to make it speak the truth. In making these changes no deletion was made of any part of the existing record, but they consisted of an amplification thereof and addition thereto by the insertion in the minute book, under their respective dates, of a record of the adoption of the first resolution required by section 7 of the Local Improvement act and the record of the adoption by the board of the resolution approving the ordinances for the improvements here in question and recommending them for passage by the city council. All of these actions were already shown by the board's records in the books of resolutions and estimates and no change was made which was based solely on the memory of the person making the change. The statute does not purport to prescribe the details as to the keeping of these records, and the requirements of the statute can only be held to be met when the records show not only the text of the purported resolution but also that it was duly adopted. (*City of Mt. Carmel* v. *Risley*, 263 Ill. 299.) In *People* v. *Hartquist*, 315 Ill. 228, it was said: "Where by law it is made the duty of a public officer to keep a record of proceedings and through oversight or mistake he fails to do so or makes an incorrect record, whenever he discovers from the data in his office, as such officer, such omission or mistake, it is his duty as such officer to correct the mistake or supply the omission in the record so that the record shall speak the facts correctly, and if he fails to do so *mandamus* will lie to compel the performance of this duty. When such amendment is made, the record as amended is conclusive evidence of the facts therein stated. (*Turley* v. *County of Logan*, 17 Ill. 151; *Board of Education* v. *Trustees of Schools*, 174 id. 510.) * * * The record has the same force and effect as though originally made as amended and can no more be contradicted by parol than any other lawful record, and it speaks as of the day when the proceedings which it records were in fact had.—*County of DuPage* v. *Highway Comrs.* 142 Ill. 607; 29 Corpus

Juris, 466." (See, also, *Village of Crotty* v. *Domm,* 338 Ill. 228; *People* v. *Chicago and Eastern Illinois Railway Co.* 314 id. 382.) Miss Chandler stated that after the changes were made the record as changed correctly stated the actual occurrences. While this statement was stricken out on motion of appellants, they cannot be heard to urge that such proof was not made. (*People* v. *Clements,* 316 Ill. 282.) The record as amended showed a full compliance with all the statutory requirements, and this court in both cases properly overruled all objections based on a noncompliance therewith.

It is contended by appellants that the entire proceedings are void because the hearing was before a city judge from outside of Cook county, and that the city of Chicago has appropriated a sum of money for the payment of the expenses of outside judges when called upon by the county judge of Cook county. It is a matter of common knowledge and evidenced by the decisions of this court (*Beach* v. *People,* 157 Ill. 659; *Wells* v. *People,* 156 id. 616;) that the business of the county court of Cook county has for a great many years been of such magnitude that necessity compelled the institution of the practice and custom of many years' standing to have outside judges in constant service in the county court at the request of the judge thereof, and this practice has been sanctioned by this court in the cases cited and many others. There is no evidence in the record that in the instant case compensation was paid for the services of such judge or for his expenses by the city, but, on the contrary, the record shows that a statement directly to the contrary was made by the trial judge.

It is contended by appellants that the proceedings herein are void for the reason that the resolution of the board of local improvements recommending the improvement herein, and the estimate of the engineer thereof, were not immediately transcribed into the records of the board of local improvements. Immediately upon its adoption the resolution

was on file with the proper officers and was open for inspection by any person interested making application for such inspection. In a city like Chicago, where improvements are constantly made and the resolutions therefor are lengthy and involve many pieces of property, as does the present improvement, it is sufficient if the resolution is filed with the proper officer for transcription and the same is done as soon as reasonably practicable. Appellants' contention in this respect cannot be maintained. *Village of Crotty* v. *Domm, supra.*

It is contended by appellants that the ordinance in question is not identified as being the one recommended to the city council by the board, if one was so recommended. Appellee made out a *prima facie* case, and the ordinance here was presumed to be the one recommended until some evidence on that subject was introduced. No evidence being introduced on the subject the presumption would still be in force.

The ordinance in question made no provision for the removal of the buildings from the property condemned. The cost of removing the buildings from the properties condemned was not to be defrayed by funds raised by special assessments, and so in this case the relation and interest of the appellants in the method of the removal of the buildings and the payment therefor out of the general fund, or a fund other than the special assessment fund, are no different from those of any other citizen.

Appellants state that the improvement is unreasonable because it does not safeguard the safety of public travel, in that the corner curbs as provided are to be square instead of rounded. This court cannot hold that the ordinance is void because the city council saw fit to have square curb corners instead of round.

It is contended by appellants that the ordinance for widening North LaSalle street from Ohio street to Eugenie street is void because it provides for excess condemnation,

inasmuch as said ordinance, in providing for the taking of all (except street) of lot 31 in Starr's subdivision of lots 114, 115 and 116 in Bronson's addition to Chicago, takes more land than is necessary for the purposes of this improvement. Lot 31 faces on Carl street, with a 16-foot frontage, and extends along LaSalle street 125 feet to an alley. This is the only instance in the entire street where more than 14 feet is taken. It is the contention that the taking of the additional two feet in this particular case is excess condemnation, which makes the taking unnecessary, the ordinance unreasonable, and therefore void. The cost of the two feet would be nil, as the petitioner would have to pay as much for the 14 feet taken as it would for the 16-foot lot. If the two feet were left the city could levy no assessment against it. (*City of Chicago* v. *Lord, 277* Ill. 397.) The taking of the two feet made the next lot a corner lot and subject to a much larger assessment than if it were an inside lot, thereby benefiting the assessees generally. The cost of the widening of North LaSalle street from West Ohio street to Eugenie street alone, as confirmed, was over $6,500,000. Even if we assume that the petitioner has taken an additional two feet it could get along without, it would seem to be too trifling an error to defeat a major improvement and would come under the principle laid down in the *"de minimis"* injury cases. (*City of Chicago* v. *Wilshire, 238* Ill. 317; *Chicago Traction Co.* v. *Village of Oak Park, 225* id. 9.) When the use for which the land is required is one for which the statute gives the right to condemn, the question of the necessity for the land is largely left to the determination of the corporation, subject to the right of judicial review and revision for an abuse of the right. (*Smith* v. *Claussen Park Drainage District, 229* Ill. 155.) In *Dorwart* v. *City of Jacksonville, 333* Ill. 143, the rule is laid down as follows: "A street is clearly a public highway and for public use, and while it may benefit private property, the public generally have the right to

use it, and its use is therefore public. Whether the city council acted wisely or reasonably in ordering the opening of this street to a width of 100 feet, its action is binding on the courts unless the evidence so clearly shows injustice, oppression and unreasonableness that there is no room for a reasonable difference of opinion as to that matter. The presumption is always in favor of the validity of an ordinance, and in order to justify a court in interfering on the ground that the ordinance is unreasonable the proof must be clear and strong, and where there is room for reasonable difference of opinion the action of the city council is final." In the instant case we do not find that the widening of the street two feet more than at other places, under the circumstances shown, proves injustice, oppression and unreasonableness so clearly that there is no room for a reasonable difference of opinion.

What we have heretofore said applies equally to Nos. 19201 and 19586. In 19586 two additional contentions are made, the first of which is that the entire proceedings herein should have been dismissed because (1) the city of Chicago has no money available in the fund set aside for payment for the property to be condemned in this proceeding; (2) the people of Chicago on the 10th day of April, 1928, voted against granting the city of Chicago the right to issue bonds for the payment of properties to be condemned; and (3) the city of Chicago is indebted in a large sum of money and therefore is not in a position to make payment for the condemned properties. A motion that all orders entered by the trial court be vacated and set aside and this cause be dismissed for the reasons above mentioned was made on October 19, 1928. When appellee elected to enter the judgment herein it thereby became bound and liable to pay the amount of such judgment whether the assessment is collected or not. (Local Improvement act, sec. 32.) The city of Chicago is a very large municipality. The final judgment in this case, under the statutes, is an obligation

on it to pay. The judgment is final as far as the city is concerned and cannot be set aside after the lapse of ninety days; (*People* v. *Weaver,* 330 Ill. 643;) and even though the city has not on the day of the judgment order or at the end of a reasonable period following the judgment,— that is, after the assessments have been either collected or are in default,—sufficient money to pay the awards, the court will by proper action enforce the judgment against the city. *Non constat* that because it does not now have the funds on hand, when the time comes to meet the liability it will not have sufficient funds derived from an authorized bond issue, from increased taxation or from some other source, to meet the same.

The second contention in 19586 is, that a motion made by an assistant corporation counsel to dismiss the case was a confession of error and an admission of the validity of the motions to dismiss made by the defendants, so that thereupon all proceedings should have been dismissed. On October 15, 1928, after a motion had been made by counsel representing some of the objectors to dismiss the proceedings on certain specified grounds, an assistant corporation counsel stated that the city made a motion to vacate the orders entered and dismiss, whereupon an objection was made to such action by an attorney who stated that he represented a great many of the property owners. Thereupon another attorney who represented some of the objectors charged that the city's motion was not made in good faith, and started to make a lengthy argument, in the course of which he stated that he joined in the motion to dismiss on grounds which he was proceeding to state, when he was stopped by the court with the statement that the city's motion had been withdrawn. We know of no authority holding that a plaintiff cannot withdraw his motion to dismiss his suit at any time before it is acted upon by the court or that the making of such a motion is a con-

fession of error in the antecedent proceedings. We have been cited no authorities so holding by appellants.

From an examination of the entire record we are of the opinion that the court had jurisdiction in the premises and that no reversible error has been shown. The judgments of the county court are therefore affirmed.

*Judgments affirmed.*

FARMER, C. J., and DUNN, J., dissenting. (See p. 638.)