People of the State of Illinois ex rel. Moody Bible Institute of Chicago, Appellee and Cross Appellant, v. City of Chicago et al., Appellants and Cross Appellee.

Gen No. 40,573.

Heard in the second division of this court for the first district at the February term, 1939. Opinion filed November 28, 1941.

BARNET HODES, Corporation Counsel, for appellants and cross appellees; JOSEPH F. GROSSMAN, First Assistant Corporation Counsel, and J. HERZL SEGAL, Assistant Corporation Counsel, of counsel.

URION, BISHOP & SLADKEY, of Chicago, for appellee and cross appellants; HOWARD F. BISHOP, DANIEL S. WENTWORTH and ROBERT F. DEWEY, all of Chicago, of counsel.

Mr. Justice Sullivan delivered the opinion of the court.

The Moody Bible Institute of Chicago (hereinafter referred to as the Institute) filed a petition for mandamus against the City of Chicago and certain of its officials (hereinafter for convenience sometimes referred to collectively as the city) to compel payment of the balance of certain condemnation judgment awards and interest thereon, which judgment awards were entered on November 28, 1930, in a condemnation proceeding wherein property of the Institute was taken for public use by the city. The city and its officials admitted in their answer the entry of said judgment awards and the partial payments made on account of same, but denied any obligation to pay the unpaid balance of said awards because of the failure of the Institute to perform an agreement alleged to have been made by it to remove its property from the condemned portions of its land. The city filed an amended counterclaim wherein it averred petitioner's breach of the agreement to remove its property from the condemned portions of its land and claimed damages by reason thereof equivalent to interest on the amounts paid upon the judgment awards at the rate of 5 per cent from the dates of payment. After a hearing by the court without a jury the issues raised by the petition for mandamus and the answer thereto were found in favor of the city. The issues presented by its amended counterclaim were found against the city. The city perfected its appeal to this court from that portion of the judgment order denying its counterclaim. Petitioner filed its notice of appeal to the Supreme Court from that portion of the judgment order denying its petition for mandamus. In the appeal taken by petitioner to the Supreme Court, that court entered the following order: "In this case it appears a prior appeal has been prayed to the Appellate court, First

District. This appeal is dismissed without prejudice.'' Petitioner then perfected a cross-appeal to this court from that portion of the judgment order of the trial court denying its petition for mandamus.

The following material facts appear from admissions made by the parties in their pleadings and from the evidence submitted at the trial. December 23, 1924, the city council of the City of Chicago passed an ordinance pursuant to the Local Improvements Act, which provided for the taking of certain property, including property owned by the Institute, for the purpose of making a public improvement on North LaSalle street. In accordance with the terms of said ordinance a petition for condemnation, entitled *City of Chicago v. McCluer,* was filed by the city in the county court of cook county. Said petition and proceeding involved the condemnation of fourteen feet of property on each side of North LaSalle street for the widening thereof from Ohio street north to North Clark street. The Institute owned three parcels of land on North LaSalle street near Chicago avenue, which was only a short distance from the south end of the widening project. Certain property owners, including the Institute, filed legal objections to the special assessments and the amounts of the proposed condemnation awards. After the county court overruled such objections, said property owners waived further controversy and judgment was rendered confirming the assessments against their property and the awards to them. Said judgment awarded compensation to the Institute aggregating $519,727 as to its three parcels of land. This judgment of the county court was appealed to the Supreme Court and affirmed (*City of Chicago v. McCluer,* 339 Ill. 610). The aforesaid property owners, including the Institute, filed ''an appeal to and a petition for certiorari in the Supreme Court of the United States'' to review the judgment of the Supreme Court of Illinois. While said appeal and petition for certiorari were pending the

city and the property owners effected a compromise and entered into the following written stipulation:

"State of Illinois,⎰ss.
  County of Cook. ⎱

IN THE SUPREME COURT OF THE UNITED STATES.
October Term, A. D. 1930.

William B. McCluer, et al.,⎤
            *Appellants,*⎟
        *vs.*          ⎬No. 327.
.City of Chicago,       ⎟
            *Appellee.*⎦

It is hereby stipulated and agreed, by and between the parties hereto, that a careful investigation has been made of the awards heretofore allowed and the assessments confirmed, which investigation shows that the awards are considerably below a fair value and the assessments too high, as a result of which investigation the issues in the above entitled cause have been settled as hereinafter set forth in order that the awards and assessments may be fair and reasonable, which reasonable amounts both parties agree are in accordance with the schedule hereto attached. In consideration of the settlement of the controversy by the entry of the findings and the judgment thereon as hereinafter set forth, the parties hereby agree that the appeal and the petition for a writ of certiorari in the above entitled case now pending in the Supreme Court of the United States shall be dismissed.

In consideration of said dismissals, and immediately upon the dismissals of the aforesaid causes and delivery to the Corporation Counsel of the City of Chicago of a copy of the said orders of dismissal, appellee agrees to set aside the verdicts and judgment order entered therein in the County Court of Cook County, Illinois, as to the properties hereinafter described in the schedule hereto attached and made a part hereof,

and after evidence presented to enter findings and judgment thereon as to both awards and assessments which (subject to court approval) shall be in accordance with the amounts set up in said schedule, which schedule is hereto attached and made a part hereof.

Upon the entry of such findings and judgment order thereon, and the furnishing to the appellee evidences showing good title in the respective appellants to the properties described in said schedule, and the removal of all obstructions, or the submission to the Board of Local Improvements of a bona fide contract for their removal, from the part taken in such proceeding, said appellee agrees to pay in cash to the owners of the properties mentioned in said schedule the amounts originally allowed in said findings and judgment order as to each of them, deducting therefrom the assessments originally confirmed against each of the remainder of such properties.

Upon the payment to the appellants of the amounts allowed in the original judgment order less the original assessments confirmed against each of said properties in the assessment roll, the respective appellants agree to surrender to appellee the property taken in the above proceedings and described in the schedule hereto attached, and to have entered in the above proceeding an order, or orders, permitting the appellee to take possession of such properties for which awards have been allowed and part payment made.

Said appellants, and each of them, do hereby agree that in the event that any court or courts should decide that the appellee or any officials of said appellee be charged with the excess amount allowed to the said appellants over and above the amount in the original judgment order or/and the amount saved to the said appellants by reason of any reduction in the assessment beyond that already reduced and such decision or decisions be made final, the said appellants, and each of them, do hereby agree to reimburse the said

appellee or any of its officials and to give a personal bond to the said appellee and its officials to hold them safe and harmless in case any judgment or judgments is entered against them or either of them because or on account of this stipulation. Appellee agrees that before there can be any liability on the part of appellants, appellants will be promptly notified of any attempt to impose such liability upon appellee or its officials as aforesaid, so that appellants may have full and complete opportunity to defend any such actions on their own behalf, as well as on behalf of the appellee or its officials, as well as full opportunity to prosecute appeal.

It is further stipulated and agreed by and between the parties hereto that the appeal and petition for writ of certiorari above referred to are being dismissed solely in consideration of the entry of findings and judgment as hereinafter stated.

It is further understood and agreed that this stipulation is in the nature of a compromise, for the sole purpose of settling the issues between the parties, and cannot be used by either party in this cause except for the sole purpose of settlement in accordance with the terms hereof.

City of Chicago, *Appellee,*
By Samuel A. Ettelson,
*Corporation Counsel.*

Board of Local Improvements
of the City of Chicago,
By M. J. Faherty, *President.*

Gotthard A. Dahlberg,
*Attorney for the Board of Local Improvements of the City of Chicago.*

Foreman Trust & Savings Bank, as Trustee, Albert Grosby, Alma Jevne, Henry M. Jevne and Clara Haugan, Louis Sakowski, Bertha

L. Tessmer, Helen Brubaker, John J. Seideneck, Mary Pomeroy Green, Caroline H. Baumann, Hilda S. Hill, Grace Lane Beardsley, Melissa F. Hubbard, George W. Foster, Elinor F. McLaughlin and Mary S. Foster, Sole Heirs and Next of Kin of George A. Foster, Deceased, Edward Lindahl and John J. Weber, Trustees of the Estate of Deckra Aghasian, Deceased, Helen G. Hillis, Packard Motor Car Company of Chicago, a Corporation, William Lux, William G. Murray, Hanna Obermeyer, The Moody Bible Institute, a Corporation, The Moody Church, Sophie L. Peters, Frank Heckl and John B. Irwin, and Physicians & Surgeons Institute of Chicago, a Corporation.

*Appellants.*

By Howard F. Bishop,

*Their Attorney.*

I concur in this Stipulation,
　　Eugene H. Dupee,
　　　October 6, 1930.''

Appended to the stipulation was the following schedule:

| "Tract | Address | Award | Increased Award |
|---|---|---|---|
| 299 | 1647–57 N. LaSalle St | $55,367 | $86,500 |
| 225 | 1323 N. LaSalle St | 3,450 | 4,900 |
| 227 | 1329 N. LaSalle St | 3,409 | 4,900 |
| 253 | 1441 N. LaSalle St | 6,107 | 12,500 |
| 115 | 1322–34 N. LaSalle St | 7,020 | 9,850 |
| 116 | 1328 N. LaSalle St | 3,194 | 4,500 |
| 109 | 1302 N. LaSalle St | 2,668 | 3,500 |
| 274 | 1557–59 N. LaSalle St | 7,285 | 10,000 |
| 110 | 1304–06–08 N. LaSalle St | 7,644 | 12,000 |
| 193 | 1111 N. LaSalle St | 26,831 | 36,000 |
| 184 | 1005 N. LaSalle St | 4,076 | 9,500 |

|  "Tract | Address | Award | Increased Award |
|---|---|---|---|
| 287 | 1640 N. LaSalle St......... | 4,762 | 6,700 |
| 283 | 1626 N. LaSalle St......... | 4,184 | 5,300 |
| 230 | 1335 N. LaSalle St......... | 3,114 | 4,500 |
| 198 | 1149 N. LaSalle St......... | 15,975 | 21,000 |
| 273 | 1535 N. LaSalle St......... | 6,396 | 10,500 |
| 174 | 911 N. LaSalle St.......... | 36,280 | 50,000 |
| 19 | 748 N. LaSalle St.......... | 20,595 | 35,000 |
| 285 | 1832 N. LaSalle St......... | 4,099 | 5,500 |
| 23 | 617 N. LaSalle St.......... | 42,475 | 52,500 |
| 292 | Moody Church ............ | 25,111 | 50,111 |
| 156 | 821 N. LaSalle St.......... | 17,062 | 30,000 |
| 48 | 922 N. LaSalle St.......... | 15,895 | 29,000 |
| 62 | 1030 N. LaSalle St......... | 7,364 | 11,000 |
| 157 | 827 N. LaSalle St.......... | 8,016 | 12,500 |
| 279 | 1614 N. LaSalle St......... | 9,546 | 17,500 |
| 168 | 871 N. LaSalle St.......... | 6,850 | 12,000 |
| 221 | 1261 N. LaSalle St......... | 16,244 | 22,000 |
| 124 | 1400 N. LaSalle St......... | 7,288 | 11,000 |
| 286 | 1634 N. LaSalle St......... | 4,379 | 5,500 |
| 134 | 1438 N. LaSalle St......... | 10,718 | 26,500 |
| 265 | 1519 N. LaSalle St......... | 4,202 | 6,500 |
| 272 | 1551 N. LaSalle St......... | 5,736 | 8,100 |

Moody Institute—Award to be increased ........................350,000
Assessments of Moody Institute and Moody Church to be reduced 50%."

Pursuant to the foregoing stipulation of October 6, 1930, the appeal and petition for certiorari pending in the Supreme Court of the United States were dismissed and the city and the property owners on November 7, 1930, entered into the following stipulation, which was filed in the county court:

"It is hereby stipulated and agreed, by and between the parties hereto, by their respective attorneys, that

the verdicts and judgments thereon as to the properties owned by the parties hereto be and the same are hereby vacated and set aside.

It is further stipulated and agreed that the election heretofore made by the respondents hereinafter named, to waive further controversy be and the same is hereby vacated and set aside.

It is further stipulated and agreed that as to all questions of benefits and awards, jury is hereby waived and the cause is hereby submitted to the Court.''

The judgment referred to in the stipulation of November 7, 1930, was the original judgment of the county court, which was affirmed by the Supreme Court of Illinois (*City of Chicago v. McCluer,* 339 Ill. 610) and which was involved in the appeal and petition for certiorari filed in the United States Supreme Court and the waiver of controversy referred to was the waiver of controversy made in the county court in 1928 in the *McCluer* case.

On November 8, 1930, the following order was entered in the county court of Cook county:

''This cause coming on this day to be heard upon the motion of the parties hereto by their respective attorneys, that certain verdicts and judgments be vacated and set aside;

And the Court having heard the arguments of counsel, and being fully advised in the premises, finds that certain verdicts and judgments should be vacated and set aside;

It Is Therefore Ordered that the verdicts and judgments as to the properties owned by the following named parties [here followed names of owners, including the Institute] be and the same are hereby vacated and set aside.

It Is Further Ordered that the election heretofore made by said respondents to waive further controversy be and the same is hereby vacated and set aside.

It Is Further Ordered that upon the parties hereto having waived a jury, the cause as to the parties above named on all questions of award and benefits is hereby submitted to the Court.''

On November 28, 1930, in a trial by the court without a jury and after evidence heard the county court entered a judgment awarding compensation to the Institute, which aggregated $869,727 as to its three parcels of land. These awards to the Institute represented an increase of $350,000 over the original aggregate award of $519,727, which increase was identical in amount with the increased award provided for in the stipulation of October 6, 1930. On November 29, 1930, petitioner acquired by assignment a judgment award of $26,500, also entered November 28, 1930, as to a fourth parcel of land involved in the North LaSalle street condemnation proceeding.

As to the three parcels of land owned by petitioner from the inception of the condemnation proceedings, the city made partial payments to the Institute on the final judgment awards of November 28, 1930, in the amounts and on the dates set forth in the following schedule:

| Parcel No. | Partial Payment | Date of Partial Payment. |
|---|---|---|
| 1 | $387,552.00 | January 26, 1931; |
| 2 | 30,225.00 | March 20, 1931; |
| 3 | 101,950.00 | January 6, 1931. |

These partial payments aggregated $519,727, the exact amount of the original awards as to these three pieces of property. On April 2, 1931, the city made a partial payment of $10,718 on the Institute's subsequently acquired judgment award.

Michael J. Faherty, who was president of the board of local improvements of the City of Chicago when the foregoing occurrences took place and the above partial payments made, testified in the instant case that

it was an advantage to the city to have the property
owners themselves remove their buildings from the
condemned portions of their land because the city
would thereby avoid liability for any damages that
might ensue if it undertook such removal; and that
he insisted that the Institute comply with the provi-
sions of the stipulation of October 6, 1930, pertaining
to the removal of its buildings from the condemned
portions of its property before he would approve the
foregoing partial payments on the final condemnation
judgment. As a result of Mr. Faherty's insistence in
this regard, he received the following letter:

"Office of
President of the Institute,
December 30, 1930.

The Honorable Michael J. Faherty,
President of the Board of Local Improvements,
City Hall,
Chicago, Ill.

Dear Sir:

We hereby undertake and agree that as soon as we
receive the partial payments equivalent to the original
awards, for all of the Moody Bible Institute properties
in the LaSalle Street condemnation proceedings, we
shall arrange to have (free and clear of any contrac-
tor's lien) the buildings removed from the fourteen
feet condemned.

Very truly yours,
James M. Gray,
*President.*''

It was admitted upon the trial that when James M.
Gray wrote this letter he was president of the Insti-
tute and that it was his signature that was attached
thereto, but counsel for petitioner refused to admit
that it was Gray's signature as president of the Insti-
tute.

In conformity with the stipulation of October 6, 1930, the following communication was also delivered to Mr. Faherty by a trustee of the Institute and one of the persons whose signatures are attached thereto.

"Chicago, December 31, 1930.

Honorable Michael J. Faherty,
President, Board of Local Improvements,
Chicago, Illinois.

Dear Sir:

We, the general contractors employed by The Moody Bible Institute of Chicago to remove and alter their several buildings on North LaSalle Street in accordance with the demands required for the widening of North LaSalle Street, do hereby agree to hold The Moody Bible Institute responsible for all moneys payable and will not look to the City of Chicago for any reimbursements on account of the above contract work, agreeing also not to encumber any of the properties with mechanics' liens. The above contract refers to the following buildings: (which are all The Moody Bible Institute buildings)

900–2–4–6 North LaSalle Street, which are 4– and 6-story buildings;

851 North LaSalle Street, the building on the Northeast Corner of West Chestnut and LaSalle Street;

830 North LaSalle Street;

The auditorium building on the Northwest Corner of Chicago Avenue and LaSalle Street;

1438 North LaSalle Street;

Houses between Auditorium building and 830 N. LaSalle St.

As general contractors we agree to commence work within twenty-four hours after all the partial payments of all the awards have been made by the City of Chicago to The Moody Bible Institute of Chicago (by partial payments is meant that part of the award on each property equivalent to the original judgment) and

to complete same within sixty days from the date of commencement, except as to the 8-story building at 830 North LaSalle street, which, on account of its character and construction may require additional time, but at any rate not more than one hundred twenty days.

(Signed) Nelson Building Construction Co.
(Signed) By Andrew Nelson, *Pres.*
(Signed) J. W. Snyder Co.
(Signed) By J. W. Snyder.''

Mr. Faherty further testified that he also demanded from the Institute the indemnity agreement provided for in the stipulation of October 6, 1930, before he would approve the partial payments on the final compensation awards. The Moody Bible Institute by its president and secretary executed the indemnity agreement on December 12, 1930, and delivered same to the City of Chicago.

It was only after it had received the letter from Gray to Faherty, the letter from the contractors to Faherty and the indemnity agreement that the city made the partial payments to the Institute to the extent of $519,727 on its final awards as to its three parcels of land. After said partial payments had been received by the Institute it failed and refused to remove its buildings from the condemned portions of its property. The city proceeded with and completed the paving portion of its widening project but was unable to proceed with the sidewalk portion thereof in front of the premises owned by the Institute. In November 1931, the city was compelled to condemn and have removed the building on one of the parcels of land owned by the Institute because of its hazardous condition. Thereafter a sidewalk was built in front of this parcel.

In an attempt to prove in the instant mandamus proceeding that the written stipulation of October 6, 1930, did not contain all of the terms of the agreement be-

tween the Institute and the city, especially as to that part of said stipulation which related to the removal of the Institute's buildings from the condemned portions of its property, Howard F. Bishop, the attorney for petitioner, offered in evidence certain documents which were excluded upon the city's objection. It should be noted at this point that Samuel A. Ettelson was the corporation counsel of the city when the stipulation of October 6, 1930, was executed and that because of a change in the city administration he was succeeded in that office by William H. Sexton in April 1931. One of the documents offered in evidence by petitioner was a letter dated April 5, 1932, from Sexton to Ettelson, to which was attached a letter from Howard F. Bishop to Sexton dated March 11, 1932. Attorney Bishop's letter was in substance a statement of his conception of what he termed the complete agreement between the city and the Institute covering, among other matters, the removal of the Institute's buildings from the condemned portions of its property. The letter from Sexton to Ettelson requested the latter to state "whether or not you did in behalf of the city make the agreement as recited in Mr. Bishop's letter." Another of the rejected documents offered by petitioner was Ettelson's letter of April 15, 1932, in reply to Sexton's letter, which stated in part: "I am familiar with the situation and took part in the conferences referred to in your letter and in the letter of Mr. Bishop for the purpose of settling and adjusting the matter upon lines that I regarded to be for the best interests of the City. I have read Mr. Bishop's letter to you very carefully and it accords with my recollection and understanding in regard to the agreement that a general judgment should be taken against the City for the increase in awards, interest, damages, and cost of removal as described in Mr. Bishop's letter. It was unfortunate, of course, that there wasn't sufficient money to pay these awards in full."

The other document which was offered in evidence by petitioner and excluded was a memorandum dated January 9, 1935, from Joseph F. Grossman, first assistant corporation counsel, to William H. Sexton, corporation counsel, to which memorandum was attached a computation of interest and also an unsigned statement submitted by Mr. Bishop again proposing a settlement between the Institute and the city.

All the foregoing documents offered in evidence by the petitioner were properly excluded by the trial court. After several conferences between the attorney for petitioner and William H. Sexton, the then head of the law department of the city, in an effort to settle the claims advanced by petitioner to the end that the Institute's property would be cleared so that the improvement might be completed, Corporation Counsel Sexton requested Attorney Bishop to address a letter to him "setting out his contentions." This is the letter which Sexton received from Attorney Bishop and attached to his own letter to Ettelson, and, inasmuch as it consisted entirely of self-serving declarations and was submitted merely as a part of negotiations for a compromise which was never consummated, it was clearly inadmissible in evidence. It was as to the contents of this letter that Sexton requested information from Ettelson, his predecessor as corporation counsel for the city. Inasmuch as the statements in Ettelson's letter to Sexton were made concerning the self-serving declarations contained in Attorney Bishop's letter and inasmuch as Ettelson had no official connection with the city when he wrote the letter, the statements contained therein could in no wise be construed as admissions by the city. All this correspondence was merely part of the investigation conducted by Sexton in his endeavor to ascertain if there was any merit to the claims advanced by petitioner. It all had to do with the Institute's unsuccessful attempt to com-

promise such claims and it was therefore incompetent and inadmissible.

Since Attorney Bishop's written statement of December 10, 1934, entitled "Reference Proposed LaSalle Street Settlement" was purely a proposal of settlement and since Grossman's letter of January 9, 1935, to Corporation Counsel Sexton, to which the Bishop statement was attached, was an interoffice memorandum concerning such proposal, neither of such documents were admissible in evidence inasmuch as they both related to negotiations for compromise and settlement. Since offers to compromise or proposals of settlement, which are not accepted, have no binding force, they cannot be considered competent evidence.

Petitioner first contends that "it did not agree to remove the buildings from the part condemned at its own expense, and, further, that the stipulation of October 6, 1930, does not impose any such obligation upon the Institute. It is further contended that said stipulation does not contain the entire agreement between the city of Chicago and the Institute." We are concerned primarily with the question as to whether that stipulation did contain the sole and complete agreement between the parties as to the removal of the Institute's buildings from the condemned portions of its premises. It is fitting that the stipulation be analyzed as to the obligations contained therein and the manner in which they were to be and have been performed. It will be noted that Attorney Bishop executed this stipulation on behalf of the property owners involved, including the Institute, and that it was concurred in by Attorney Eugene H. Dupee. The stipulation states that it "is in the nature of a compromise for the sole purpose of settling the issues between the parties."

Just what matters were covered by the stipulation and to what extent were the obligations thereunder of the respective parties performed?

The Institute agreed to dismiss ''its appeal and petition for certiorari'' then pending in the Supreme Court of the United States. It did that.

The city agreed to vacate the original judgment awards in the county court. It did that.

The city agreed to permit a judgment to be entered against it in the county court increasing the aggregate award to the Institute by $350,000 and reducing its assessments 50 per cent. It did that.

The city agreed to make partial payments to the Institute of $519,727, the amount of the aggregate of the original awards, upon the entry of the final condemnation judgment in the county court and ''the submission to the Board of Local Improvements of a bona fide contract'' by the Institute for ''the removal of all obstructions'' from the condemned portions of its land. The city made such payments.

The Institute agreed to deliver to the city a contract of indemnity. It did that.

The Institute agreed that before it was entitled to receive the partial payments on its final awards it had to furnish evidence to the city of ''the removal of all obstructions, or the submission to the Board of Local Improvements of a bona fide contract for their removal from the part taken in such proceeding.'' It delivered to the city the contract heretofore set forth for the removal of the obstructions.

The Institute agreed that when the city made the partial payments to it on account of the final awards, it would surrender to the city the condemned portions of its property and have an order entered in the county court permitting the city to take possession of such property so that it could complete its improvement. The Institute did not comply with its agreement in this respect, because it repudiated its obligation under the stipulation to remove or have removed its buildings from the condemned portions of its land.

The provision of the stipulation of October 6, 1930, pertaining to the removal of the obstructions from the condemned portions of petitioner's property is open to no other construction than that the Institute assumed the obligation of removing such obstructions at its own expense. If there was any possible doubt concerning the meaning of such provision or the intention of the parties as to same, it would necessarily have to be resolved against the Institute in view of the interpretation placed upon it by its own officers, as evidenced by the delivery of the letter of Gray, its president, and the contract for the removal of the obstructions to President Faherty of the Board of Local Improvements. Both of these documents show conclusively that the officers of the Institute clearly understood after the final judgment awards were entered and before the partial payments were made on same that the Institute was obligated to remove the obstructions at its own expense before it was entitled to receive said partial payments from the city. The only other conclusion possible is that when Gray wrote the letter to Faherty on December 30, 1930, stating that, ''We shall arrange to have (free and clear of any contractor's liens) the buildings removed from the fourteen feet condemned,'' and that when one of the trustees of the Institute delivered the removal contract dated December 31, 1930, to Faherty, containing the statement that the contractors ''agree to hold The Moody Bible Institute responsible for all moneys payable and will not look to the city of Chicago for any reimbursement on account of the above contract work,'' the officers of the Institute intended to practice a deliberate fraud upon the city in order to secure the partial payments. We prefer to believe that said officers at that time recognized the obligation of the Institute under the stipulation of October 6, 1930, to remove the obstructions at its own expense, and fully intended to perform same

but that they were improperly dissuaded from so doing.

As has been seen the stipulation of October 6, 1930, was a contract complete in itself as to all matters covered therein and we have a situation presented where the city performed all its obligations under such stipulation and the Institute wrongfully refused to perform its obligation to remove its buildings from the condemned portions of its land. In view of the agreement by the city in the stipulation of October 6, 1930, to increase the original awards to the Institute of $519,727, which awards had been affirmed by the Illinois Supreme Court, by the not inconsiderable amount of $350,000, the agreement on the part of the Institute to remove its buildings from the condemned portions of its premises at its own expense was surely not unreasonable. There is evidence in the record that the cost of such removal would have been approximately $42,000.

Petitioner next contends ''that the admitted, final and unconditional condemnation judgment of the county court is conclusive in this mandamus proceeding and cannot be varied or contradicted in any respect by extrinsic evidence; that the introduction in evidence of the stipulation of October 6, 1930, constitutes an outright collateral attack on the terms and provisions of the judgment itself which, under the law of this state, cannot be permitted.''

The insistence by the city that the Institute perform its agreement and comply with its obligation to remove its buildings at its expense from the condemned portions of its properties before it is entitled to compel the city to pay the balance of the condemnation awards does not question the unconditional character or the finality of the condemnation judgment. It must be remembered that the attorney for the Institute signed the stipulation of October 6, 1930, in its behalf. This

instrument as stated therein was "in the nature of a compromise" and it constituted a valid and binding contract between the parties thereto. The obligation therein of the Institute to remove the obstructions was just as material as was the obligation of the city to procure the vacation of the earlier condemnation judgment and the entry of the later judgment for the increased awards. The agreement by the Institute to remove the obstructions constituted a substantial part of the consideration for the obligations undertaken by the city in the stipulation. It is idle to urge that because said obligation of the Institute was not made a part of the record in the proceeding that resulted in the judgment for the increased condemnation awards or that same was not made a part of the judgment itself that that portion of the stipulation of October 6, 1930, containing the obligation of the Institute to remove its buildings at its expense from the condemned portions of its property was merged in the condemnation judgment. While it would have been safer practice in view of all that has occurred since, if the city as a matter of protection against such a contention as is now advanced in behalf of the Institute had made the stipulation a part of the record in the condemnation proceeding, it by no means follows that the city should be deprived of a substantial right under said stipulation because of its failure to incorporate same in such record. In our opinion the agreement of the Institute to remove the obstructions being an entirely distinct and separate undertaking from that of the city to permit the entry of the condemnation judgment for the increased awards, it was neither merged in the condemnation judgment nor rendered ineffective, invalid or unenforceable by reason of the entry of said judgment. The Institute by its then and present attorney voluntarily and for a valuable consideration entered into a valid and binding contract on October 6, 1930, and that contract is just as valid and binding now as it was then.

The admission in evidence of the stipulation of October 6, 1930, did not constitute a collateral attack on the condemnation judgment and to hold the Institute to the performance of its undertaking to remove the obstructions does not in any manner modify or contradict the condemnation judgment either as to its amount or its finality. It merely postpones plaintiff's right to demand the payment of the balance of its condemnation judgment until it performs its obligation to remove its buildings from the condemned portions of its property.

The city filed an amended counterclaim which alleged *inter alia:*

"Defendants aver that said City of Chicago made partial payments on account of said judgments. . . . Relator immediately returned to said City of Chicago from the proceeds of said payments the amount of benefits assessed and adjudged against the parcels of land described in said petition and the net amount paid by said defendant to and retained by the relator after deducting the amount of benefits assessed and adjudged against said parcels of land are as follows:

| Parcel No. | Net Amount paid | Date of Payment |
|---|---|---|
| 1 | $347,667.00 | January 8, 1931 |
| 2 | 25,964.50 | March 25, 1931 |
| 3 | 90,677.00 | January 8, 1931 |
| 4 | 10,718.00 | April 2, 1931 |

"Defendants further aver that by reason of the failure and refusal on the part of said relator to remove the buildings and obstructions upon the condemned portion of its properties or the submission to the Board of Local Improvements of a bona fide contract for their removal, said relator has breached the said agreement dated October 6, 1930, and the said defendant has been wrongfully deprived of the use of the moneys paid on account of said judgments as aforesaid and is therefore entitled to recover damages equiv-

alent in amount to interest upon said amounts at the rate of 5% per annum upon the respective amounts from the respective dates of payment."

Included in the judgment order from which this appeal is taken is the following finding:

"That the evidence introduced in support of said counterclaim is insufficient to support the counterclaim sued upon and that the partial payments made by the defendant City of Chicago were required to be made at the times they were made and the City of Chicago is not entitled to recover any damages on account of the counterclaim as amended."

The city concedes that it did not and could not prove any actual damages but insists that since the Institute breached its agreement of October 6, 1930, to remove its buildings from the condemned portions of its property and turn such portions over to it, it is entitled to recover damages equivalent in amount to interest upon the partial payments made to the Institute at the rate of 5 per cent per annum from the respective dates of said payments. We are in accord with the foregoing finding of the trial court as to the counterclaim and find no warrant in law for the allowance of the damages claimed by the city.

Plaintiff's motion heretofore made to transfer this appeal to the Supreme Court, which was reserved to hearing, is at this time denied.

No clear right to the issuance of a writ of mandamus having been established the judgment of the superior court is affirmed.

Other points have been urged and considered but in the view we take of this case we deem further discussion unnecessary.

*Judgment affirmed.*

SCANLAN, P. J., and FRIEND, J., concur.