THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MANUCHEHR DAYANI, Defendant-Appellant.

(No. 58086;

First District (4th Division)—December 19, 1973.

*Rehearing denied January 11, 1974.*

Jerome Rotenberg, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis, Jerald A. Kessler, and Patricia Unsinn, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE ADESKO delivered the opinion of the court:

The defendant, Manuchehr Dayani, was indicted on December 21, 1971, by the Grand Jury of the Circuit Court of Cook County for the offense of theft. It was charged that defendant knowingly exerted unauthorized control over a number of checks and an amount of currency in excess of $150.00, the property of Hilton Hotels Corporation, in violation of Ill. Rev. Stat. 1969, ch. 38, sec. 16—1(a)(1). He was tried on June 30, 1972, in a bench trial, pursuant to a stipulation of facts entered into by defendant and the State. No oral testimony was presented, though defendant objected to the admissibility of certain stipulated facts. He was found guilty of the offense charged and was sentenced to five years probation. Defendant appeals and raises the following issues:

"(1) That the evidence did not prove him guilty beyond a reasonable doubt, since it was not shown that he had exerted unauthorized control over checks or currency in excess of $150.00;

(2) That there was a material variance between the indictment and the evidence presented at trial; and

(3) That certain letters were improperly admitted into evidence before the trial court to the prejudice of defendant."

The facts stipulated to are as follows:

Defendant was employed as a security officer at the Conrad Hilton Hotel in Chicago, under the supervision of Mr. Richard Kampert, head of security for the hotel. Funds collected at the hotel during a weekend period were placed in envelopes and stored in a vault until Monday morning. At 9:00 A.M., Monday, May 18, 1970, the vault was opened and the payments collected were checked. Cash and checks totaling $25,-651.35 were found to be missing from the weekend's receipts. The defendant was one of several security guards that had worked at the vault over that particular weekend and had signed papers relating to the placing of the envelopes in the vault by various cashiers in the normal course of his duties.

On August 10, 1971, the defendant was arrested outside his Chicago apartment by agents of the United States Immigration and Naturalization Service for overstaying his student visa and changing his residence without providing a forwarding address to Immigration authorities as required by law. He was taken to the Federal Building where he was processed and searched. Defendant was then taken back to his apartment by Mr. Lopez, the arresting agent, to get his passport which he claimed was in the apartment. The defendant found his passport in a suitcase in the entrance hallway closet of his apartment. Mr. Lopez saw several travelers checks made payable to the Conrad Hilton Hotel inside the suitcase. The officer telephoned Mr. Kampert and returned defendant to the Federal Building where he was detained for the immigration violation. On August 11, 1971, defendant was arrested pursuant to a warrant by officers of the Chicago Police Department and was searched by the officers. Two First National City Bank Traveler's Checks, allegedly the property of the hotel, were taken from him and inventoried by the officers in defendant's presence.

Mr. Kampert stated that on January 22, 1971, two other First National City Bank Traveler's Checks, part of those taken in the theft in May of 1970, were returned to him after they had been negotiated by someone. The handwritten identification of the person negotiating these checks was compared with handwriting samples of defendant made while he was working at the hotel. Mr. Linton Godown, a handwriting expert,

stated that the handwriting on the back of the checks in question was that of defendant.

Mr. Ray Hinze, the assistant auditor of the Conrad Hilton then described the collection and auditing process used by the hotel. Among other things used to keep track of the amounts collected and placed in envelopes in the vault was a summary sheet of deposits upon which the amount in each envelope is listed and then initialed by the cashier depositing it. The security man on desk duty countersigns each deposit with his initials. Mr. Hinze then said that an examination of their microfilm records of May 16, 17 and 18 of 1970, showed that the four checks in question were inside an envelope taken in the theft, containing $5,306.06. The sheet listing this envelope was countersigned by defendant.

Defendant first argues that it was not proven beyond a reasonable doubt that he had "exerted unauthorized control over property having a value in excess of $150" as charged in the indictment. He argues that the evidence introduced by the prosecution only proved that control was exerted over three checks totaling $60.00 and not in excess of $150 as he was charged with and found guilty of taking. Since other people had access to the vault during the period in which the checks were stolen and since only $60 in checks were recovered or traced directly to defendant, it is argued that the trial judge's conclusion, based on circumstantial evidence, that defendant had taken the other property missing was in error.

■■■ We disagree with defendant's contention. It is well settled that the commission of an offense may be established by circumstantial evidence. As was stated in *People v. Bernette,* 30 Ill.2d 359, 197 N.E.2d 436:

"* * * a conviction may be sustained upon circumstantial evidence as well as direct evidence, (*People v. Russell,* 17 Ill.2d 328,) it being necessary only that the proof of circumstances must be of a conclusive nature and tendency leading, on the whole, to a satisfactory conclusion and producing a reasonable and moral certainty that the accused and no one else committed the crime. (*People v. Magnafichi,* 9 Ill.2d 169; *People v. Grizzel,* 382 Ill. 11.) The [trier of fact] need not be satisfied beyond a reasonable doubt as to each link in the chain of circumstances relied upon to establish guilt, but it is sufficient if all the evidence, taken together satisfies the [trier of fact] beyond a reasonable doubt of the accused's guilt." 30 Ill.2d 367.

The evidence presented showed that defendant was in fact on duty and in the vault area, with access to the vault, during the period in question. The checks recovered were linked directly to him and there is no question that these checks were taken from the hotel vault area. The trial

court could very properly find, therefore, that defendant had stolen these checks.

■■■ The fact that only $60 in checks were recovered from defendant or traced to him does not mean that the State has failed to prove that he exerted control over property in excess of $150. It was shown that the checks traced to defendant or recovered from him were in an envelope taken in the theft which contained $5,306.06, in cash and checks. There is ample basis in the record then to support a finding that defendant took this envelope, "exerting control" over property well in excess of $150. The amount of property stolen is not determined by the amount actually recovered (*People v. Hansen,* 28 Ill.2d 322, 192 N.E.2d 359), and a conviction may be upheld even where no property is in fact ever recovered. (*People v. Johnston,* 382 Ill. 233, 46 N.E.2d 967.) This is even more appropriate where the defendant has had an "opportunity to dispose of some of the proceeds." *People v. McKibbins,* 128 Ill.App.2d 175, 180, 263 N.E.2d 131.

Defendant next contends that there was a fatal variance between the proof and the indictment, specifically, that there is no relationship shown in the record between the Hilton Hotels Corporation (listed as the owner of the property in the indictment) and the Conrad Hilton Hotel.

■■ All variances of this nature do not constitute, per se, fatal defects. It is necessary, however, that the indictment or information "clearly allege rights of possession and ownership in someone or some entity other than defendant." (*People v. Merrill,* 76 Ill.App.2d 82, 87, 221 N.E.2d 145, citing *People v. Henry,* 68 Ill.App.2d 48, 51, 214 N.E.2d 550.) The indictment in the instant case quite clearly is sufficient in this regard. Further, the variance must not cause substantial injury to the defendant, either by hindering the preparation of his defense or allowing him to be prosecuted a second time for the same offense. (*People v. Thomas,* 20 Ill.2d 603, 606, 170 N.E.2d 543; *People v. Nelson,* 17 Ill.2d 509, 512; 162 N.E.2d 390; *People v. Cheney,* 405 Ill. 258, 260, 90 N.E.2d 783.) Defendant has failed to show any actual, substantial injury in the record of the instant case and "the mere possibility of prejudice is insufficient to require a reversal on the ground of variance." *People v. Nesbitt,* 21 Ill.2d 487, 489, 173 N.E.2d 447.

Defendant's final contention is that certain letters were erroneously admitted into evidence by the trial court. He argues that the letters were of no probative value and only served to prejudice him in the eyes of the trial judge. He submits that the letters are at best an attempt to settle or compromise the civil suit filed to recover the remaining funds and states that such offers to settle or compromise a claim are not admissible as competent evidence. As support for this proposition, defen-

dant cites Gard, *Illinois Evidence Manual*, Rule 204, and *People ex rel. Moody Bible Institute v. City of Chicago*, 312 Ill.App. 126, 37 N.E.2d 895.

■■ While defendant is correct in his basic statement as to the admissibility of offers of compromise, he has failed to grasp an essential dichotomy between the rule of civil and criminal evidence in Illinois. "In Illinois, the general and undisputed rule is that offers of settlement, as such, are not admissible into evidence [citations] * * * on the ground that public policy favors the settlement of claims outside of court." (*Prewitt v. Hall*, 113 Ill.App.2d 198, 201, 252 N.E.2d 43.) This is the rule of evidence in all civil cases, such as the case cited by defendant. However, the rule in a criminal prosecution is the opposite of that in civil actions. In a criminal prosecution, any communication or evidence of a communication is admissible into evidence if it was such, "* * * tending to show an effort by the [defendant] to settle the criminal liability by settling the civil liability." (*People v. Greben*, 352 Ill. 582, 186 N.E. 162. See also *People v. Gambory*, 402 Ill. 74, 80, 83 N.E.2d 321, and *Barr v. People*, 113 Ill. 471, 473.) This is done, again, for reasons of sound public policy and in the interests of justice, which must not be obstructed by a defendant's offer of money or other settlement rather than face prosecution. In the case now before this court, this rationale appears particularly applicable.

■■ In the instant case, defendant offered to return the money in exchange for having all charges against him dropped. In the letter to Mr. Kampert, he wrote:

"If I spend while in this jail for some time or some how I finish my life, I'm sure you won't get any out of it. So let's make a deal out of money—$12,000.—How much it is necessary to pay to your comp[any] until all charges dropped—and I will write to my home country and straight to you comp[any] pay this money * * * I would like to do this before going to judge, if you let me see you or your attorney and my attorney here we can decide better * * * let me know, I call my family * * * and they will get money to your comp[any]."

This is quite clearly an attempt to "settle" the criminal charge or it may even be an attempt at bribery. Defendant asks that *all* charges be dropped and says the money is out of the country and that the only way to recover it would be to drop the prosecution of him, in return for which he would arrange to have his family return the money. This is quite clearly evidence that has great probative value as to whether defendant took the money in question, and it is not, as defendant suggets, a simple attempt to settle the civil suit. Furthermore, the suicide

threat contained in the letter, as pointed out by the State, does not render the letter inadmissible as a result of its inclusion. (See *People v. O'Neil,* 18 Ill.2d 461, 465, 165 N.E.2d 319.) We are of the opinion that the trial judge was correct in admitting this evidence.

For the foregoing reasons, the judgment of the Circuit Court of Cook County is hereby affirmed.

Judgment affirmed.

DIERINGER and JOHNSON, JJ., concur.