**People of the State of Illinois, Plaintiff-Appellee, v. John Reed, Defendant-Appellant.**

**Gen. No. 52,638.**

First District, First Division.

December 16, 1968.

Gerald W. Getty, Public Defender of Cook County, of Chicago (John E. Hughes and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James Kavanaugh, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE BURMAN delivered the opinion of the court.

The defendant, Johnnie Reed, was charged with the crime of attempted robbery (Ill Rev Stats, c 38, § 8-4). He was found guilty after a bench trial and was sentenced to the Illinois State Penitentiary for not less than one year nor more than three years. Our record shows that the date of conviction was April 19, 1967, and that on the same day notice of appeal was filed. The abstract and brief for the defendant was filed on August 23, 1968, more than a year later, by the Public Defender. The brief for the State was filed on September 25, 1968. No reply brief was filed and oral argument was heard on November 18, 1968.

The defendant contends, on appeal, that the State did not establish defendant's guilt beyond a reasonable doubt, on the ground that the single identification of the defendant was vague, doubtful and uncertain. This contention is predicated upon the fact that the description of the complainant gave the police said nothing about the assailant's face, but merely mentioned the dark

coat he, the assailant, was wearing. The rule is well established in Illinois that a conviction cannot be deemed to be sustained by evidence beyond a reasonable doubt if the identification of the accused was vague, doubtful and uncertain. People v. Ikerd, 26 Ill2d 573, 579, 188 NE2d 12. However, a single identifying witness has been held sufficient to sustain a conviction. People v. Hunter, 23 Ill2d 177, 180, 177 NE2d 138.

The evidence reveals that Ernesto Pizarro, the complaining witness, was returning to his apartment about 8:45 p. m. on January 30, 1967. When nearing Wabash Avenue on 9th Street, he was approached by a man wearing a dark coat and holding a gun, "a beautiful Lombardi revolver." The assailant said "give me some money" to which Pizarro replied "I no have no money, I give you no money." When asked what happened after he told the assailant that he had no money, the complainant answered "Well, I walked into my home . . . across the street, I am watching the guy to see he is going downtown or turning south." Mr. Pizarro said he observed the assailant walk east on 9th Street and then south on Michigan Avenue. The complaining witness then went outside, hailed a passing police squad car, and went "looking for a guy with a dark coat on." Twenty minutes later, at about 12th Street on Michigan Avenue, the occupants of the squad car saw a man walking behind some parked cars. The squad car turned around and two policemen got out of the car to apprehend the man. The two police officers seized the defendant and brought him back to the squad car where Pizarro identified him as the man who had accosted him. Mr. Pizarro also testified that at the time of the attempted robbery, lighting conditions were good.

Spencer Coleman, a police officer, testified that after Pizarro entered his squad car they saw a person walking on Michigan Avenue about the 1200 block. The man they

observed "had the type of hat that the complainant had described, and he had a bundle, it looked like he was putting on his coat." Officer Coleman said they then turned the squad car around in order to face the defendant. When they had done this the defendant ran away. The defendant, when apprehended, was carrying a dark gray coat and had taken off all of his clothes except his pants, shirt and shoes. The defendant also had thrown his hat on the ground. Officer Coleman said that the defendant struggled for a few minutes when he was arrested.

The defendant testified that he was unemployed and had been job hunting that morning. He further testified that he had attended a movie in the early evening and at 7:20 p. m. started to walk home. The defendant denied that he had attempted to rob Pizarro and also denied that a police officer had chased him on the night in question. He said he did not own a gun.

It appears from the testimony of the various witnesses that Pizarro's identification of his assailant rested entirely on the dark coat the assailant was wearing and the "beautiful Lombardi revolver" which was never found. The only words the assailant uttered were "Give me some money." On direct examination the complaining witness did not state the length of time he observed the defendant during the robbery attempt. The complainant also did not give a description of the defendant based on impressions received at the time of the attempted robbery. After Mr. Pizarro testified to the few words that passed between his assailant and himself and how the defendant was apprehended, he was asked the following questions and he made the following answers:

Q. Now, did you see the defendant sitting in the courtroom, Johnnie Reed, immediately after this? Did you see him?

345

A. Immediately afterwards, I don't identify him from face to face, but I identify the coat that he was wearing as a dark coat.

Q. Did you see him face to face?

A. Yes, sir.

Q. And was anyone with Johnnie Reed when you saw him face to face?

A. The policeman.

Q. And about how much later in terms of minutes was this that you saw Johnnie Reed from the time in which Johnnie Reed said "Give me your money."

A. Twenty minutes.

From the foregoing testimony Mr. Pizarro apparently did not see the defendant face to face until the policemen brought the defendant to the squad car.

The defendant relies heavily on the case of People v. Kincy, 72 Ill App2d 419, 219 NE2d 662. In that case the Appellate Court reversed a conviction of robbery after a bench trial because of the failure of complainant to make a facial identification of the defendant. There, as here, the complaining witness did not at any time testify that she had seen the defendant's face or any of his features during the robbery; after the robbery she called the police and told them that she had been held up by a tall, thin brownskinned man; that the robber wore a jacket and a hat, and that he was in his early thirties. The defendant was apprehended about sixteen blocks from the occurrence and the complaining witness identified the defendant as her assailant by no other characteristics than the color of his jacket, about which she was not positive, and the color of his hat.

The State claims that the complainant was able to and did identify the defendant by more than the "dark coat,"

and that the identification in the instant case is not analogous to the identification made in People v. Kincy, 72 Ill App2d 419, 219 NE2d 662. They support their claim with the following language from People v. Jackson, 95 Ill App2d 28, 32, 237 NE2d 858:

> [t]he fact that Mrs. Lanier failed to remember certain physical characteristics of her assailant does not, as a matter of law, render her identification of the defendant unworthy of belief.

In Jackson, the defendant was charged with rape and attempted rape. The complainant testified that during the two minutes that the defendant was on top of her she was able to observe his face, haircut and clothes. She also testified that she told the police her attacker's height, weight, skin color, and the color of his shirt, pants and jacket. We held that the failure on her part to identify a scar on the defendant's face did not in itself create a reasonable doubt of the defendant's guilt in view of her positive identification, corroborated in part by her daughter. We fail to see how this case is helpful to the State. We also find that People v. Suarez, 96 Ill App2d 153, 237 NE2d 841, cited by the State is dissimilar on the facts.

The State points out that on cross-examination the complaining witness was asked:

> Q. Now, you say the man that did this to you had a dark coat on?
>
> A. Yes, sir.
>
> Q. Do you remember anything else about him?
>
> A. Well, his eyes.
>
> Q. What about his eyes?
>
> A. His eyes are—

Q. Pardon?

A. His eyes are a little more elongated.

Q. Long eyes?

A. Yes.

Further on in the cross-examination Mr. Pizarro was asked:

Q. Now, when you first saw this man, did you notice anything unusual about him, about his looks or anything?

A. Yes, his eyes, his eyes looked like that.

 We have endeavored to state the material parts of the testimony as shown in the record. The conviction of the defendant rests wholly upon his identification by the prosecuting witness. We do not question the good faith of Mr. Pizarro in his identification of the defendant as his assailant. The circumstances leading up to such identification, however, must be so convincing that there is no reasonable doubt that the crime could have been perpetrated by someone else.

 The entire incident involving Mr. Pizarro and his assailant, as determined from the testimony of the victim could have taken only a few seconds. In weighing the evidence of identification of one stranger by another, the attendant circumstances, together with the probability or improbability of affording an opportunity for a definite identification, must be considered and weighed, for after all, the identification of one person by another who has never seen him before, is an opinion or conclusion of the identifying witness. People v. Peck, 358 Ill 642, 649, 193 NE 609. It appears to us from the evidence that the principal identification of the defendant made by Pizarro was by means of a dark coat. It probably could be that the testimony of Mr. Pizarro re-

348

garding the defendant's eyes was formed when the defendant was apprehended and brought face to face with him at the squad car, the first place the complaining witness had an ample opportunity to observe the defendant. We think, therefore, that the reasoning and the holding of People v. Kincy, 72 Ill App2d 419, 219 NE2d 662 should be applied in the instant case and we have concluded from the record that the uncorroborated identification of the defendant by the complainant is doubtful, uncertain and unconvincing.

The State also raises the fact that the defendant fled when he saw the police car turn around and come towards him. In a criminal case the burden rests upon the prosecution not only to prove beyond a reasonable doubt the commission of the crime charged, but also to establish by the same degree of proof the perpetration of the crime by the person accused. People v. Kidd, 410 Ill 271, 276, 102 NE2d 141. The fact that the defendant fled when approached by police officers raises no legal presumption that he is guilty of the particular crime charged in the indictment and does not lessen the State's burden of proof. The fact of flight is a circumstance which may be considered in connection with all the other facts and circumstances in evidence. People v. Weber, 401 Ill 584, 83 NE2d 297.

After a consideration of the whole record we cannot say that the guilt and identity of the defendant is established to that point which admits no reasonable doubt of guilt. Inasmuch as the State can produce no further evidence bearing on defendant's guilt, no useful purpose would be served by remanding the cause for another trial.

Judgment reversed.

ADESKO and MURPHY, JJ., concur.