**People of the State of Illinois, Plaintiff-Appellee, v. Harold A. Brown, Defendant-Appellant.**

**Gen. No. 52,953.**

First District, Fourth Division.

June 25, 1969.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Ronald P. Katz and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and L. Michael Getty, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE DRUCKER delivered the opinion of the court.

Defendant was charged with the crimes of robbery and aggravated battery. After a bench trial he was convicted of robbery, judgment was entered, and he was sentenced to the Illinois State Penitentiary for a term of from one to ten years. Defendant appeals on the ground that he was not proven guilty beyond a reasonable doubt.

EVIDENCE

Testimony of Fransisca Reyes, complaining witness:

On the morning of October 21, 1967, she left her home at 8912 Commercial Avenue to go to a Mexican restaurant

across the street to use their telephone. As she was returning home a man grabbed her and pulled her into an alley. Her assailant took her purse and eight dollars. The man tore her sweater and scratched her face.

Her assailant came up from behind her and grabbed her face. There was just one boy involved in the attack, which took fifteen or twenty minutes. Her purse was recovered but it was empty. In court she identified the man who attacked her as the defendant.

Testimony of Rachel Suarez, called by the State:

She lives in the same building as the complaining witness. On the morning of October 21, 1967, she was alerted by the complaining witness screaming her name. She went to the window, opened it and observed the complaining witness being dragged across the street into a gangway. She ran downstairs and alerted the police. Some officers ran into the gangway in which the complaining witness was being attacked and returned shortly thereafter with the defendant in their custody.

The man who attacked the complaining witness had on a dark green jacket and dark pants; she did not see his face. It was very dark outside. The man the police brought out of the gangway had on the same clothes as the man who attacked the complaining witness. She saw only one man.

Testimony of James Dorsey, called by the State:

He is a Chicago Police Officer. Pursuant to a conversation with Rachel Suarez he went to investigate an occurrence at 8927 Commercial Avenue. When he arrived at that address he heard screams from a gangway. He turned his flashlight into the gangway and saw two men running toward him; he ran into the gangway and the two men fled in the opposite direction. He followed one of the men for about five or six doors from the scene of the incident and found him hiding under the sidewalk. The man he apprehended was the defendant. He was

wearing a green suede jacket, gray pants and a blue shirt. He had an opportunity to observe the man's face in the gangway when he shined his flashlight on the man; it was the defendant.

Testimony of Antonio Ramos, called by the Defense:

He is eleven years old and lives at 8926 Commercial Avenue with his parents and siblings. On the morning of October 21, 1967, he was watching television with his brother Hipoleto when he heard somebody screaming. He looked out of his window and saw two boys drag the complaining witness, who had been staggering across the street, into a gangway. He then saw defendant come out of a restaurant, pick up a bottle or stick from the curb and rush into the gangway. He heard the defendant say, "Stop it."

He is familiar with the defendant; he has seen him in the restaurant about once a week. He was watching a western movie on the television and he heard the screams over the sound of the television.

Testimony of Hipoleto Ramos, called by the Defense:

He is thirteen years old and is the brother of the previous witness. On the morning of October 21, 1967, he was in the living room with his little brother when they heard a disturbance outside. They opened a window and saw two boys trying to drag the complaining witness into a hallway. He saw the defendant emerge from a nearby restaurant and he heard the defendant say, "Stop." Defendant then ran to the curb, picked up a weapon and started after the two boys. At this point they closed the window and returned to watching television. They were watching a movie on television about ancient times.

Testimony of Harold Brown, the defendant:

On the morning of October 21, 1967, he was sitting in a restaurant eating dinner and waiting for an order of tacos "to go." The complaining witness came into the

416

restaurant and seemed to have been drinking; he noticed that she had a quart of beer under her coat. As she left the restaurant two guys jumped her. He saw this through the window and he then went outside to try to help her. He told the assailants to "stop it"; and when they did not, he picked up a coke bottle from the curb and started after them. By this time they had dragged her into the gangway. He proceeded into the gangway where he discovered that one guy had his hand over her mouth; and he began to fight with the other guy. The guy he was fighting with pulled out a .32 or .24 automatic and fired it once. He then disengaged and started to flee with one guy right behind him. At that point a police officer entered the gangway and said something about "halt or I'll shoot." The defendant then just turned and ran with one of the assailants right behind him. Defendant then ducked underneath the porch and heard footsteps go up the steps. He heard footsteps come down the steps and he heard two shots; at this point he was afraid that they would keep shooting so he surrendered.

He did not rob the complaining witness. He ran from the police officer because he was afraid of being shot and because he has a bad record in the neighborhoood. He is presently on probation for burglary.

Testimony of James Dorsey, recalled by the State in rebuttal:
He never heard a gunshot.

OPINION

The defendant's first argument revolves around the apparent conflict among the witnesses as to how many people were involved in the robbery. We believe that the trial judge could correctly have decided that there were two men involved in the robbery, the defendant and an accomplice. The testimony of the complaining witness seems to indicate that there was only one man involved;

but it is not unlikely that in her struggle with the defendant she never realized that there was a second person involved who actually rifled her pocketbook.

The testimony of Mrs. Suarez also seems to indicate that there was only one person involved. Mrs. Suarez, however, admits that it was dark outside and that she could not see into the gangway, and thus it is likely that she simply never saw the accomplice. It is persuasive, however, that she gave an extremely accurate description of the clothes of the man who was physically attacking the complaining witness and that her description matched defendant's clothing.

The testimony of Officer Dorsey is consistent with the two attacker theory and raises some serious questions concerning defendant's explanation. Defendant states that there were at least three shots fired during the attack and flight, and yet the officer did not hear any shots. It is possible that he was too far away from the scene to have heard the first shot, but the second and third were allegedly fired after defendant fled from the officer and it is virtually impossible that a trained policeman would not hear any such shots. Further, defendant had no valid reason to flee from the officer; indeed if there was a gun involved in the action defendant's safest course would have been to remain right where he was when the police arrived. The testimony of the defendant and the two boys was evidently not deemed credible by the court since they said they saw two attackers besides the defendant and the police officer testified that he heard screams and then saw only two men running.

Defendant raises the further argument that he was not identified beyond a reasonable doubt. First of all, the complaining witness identified him in court as the man who attacked her. Defendant raises the point that it was dark outside and that she never testified that she had gotten a look at the assailant's face. It is very likely, however, that at some time during the course of the

struggle the complaining witness got a look at her attacker. Her identification is corroborated by the fact that Mrs. Suarez's description of her attacker's clothes matched the clothes of the defendant, and by the fact that defendant fled the scene of the crime after a policeman's warning to stop. It is the fact of capture within moments after the crime coupled with the admission of flight that distinguishes the instant case from People v. Kincy, 72 Ill App2d 419, 219 NE2d 662 and People v. Reed, 103 Ill App2d 342, 243 NE2d 628. In both of those cases the arrest of the defendant was made some distance from and some time after the occurrence. The only question in those cases was whether the defendant was the individual who was at the scene of the crime. In the instant case there is no question of defendant's presence at the scene of the crime; the issue concerns his activities there—was he attacker or rescuer? Thus when a witness testified that she saw a man in a green coat and dark pants attack the complaining witness, that man was surely the defendant.

Defendant raises the final argument that he has presented a reasonable and corroborated explanation for his presence at the scene of the crime. This is not completely true because, as we have discussed previously, there is no corroboration of any shots being fired, and Officer Dorsey's rebuttal testimony directly contradicts defendant's testimony on the point. As the Illinois Supreme Court said in People v. Clemons, 26 Ill2d 481, at page 484, 187 NE2d 260:

> . . . [W]here a case is tried by the court without a jury, the determination of the credibility of the witnesses and the weight to be accorded their testimony is committed to the trial judge; and, unless it can be said that the court's judgment is found to rest on doubtful, improbable or unsatisfactory evidence, or clearly insufficient evidence, a reviewing court will

not substitute its judgment for that of the court below even though evidence regarding material facts is conflicting and irreconcilable. (People v. West, 15 Ill2d 171.)

The judgment of the trial court is therefore affirmed.

Affirmed.

ENGLISH and McNAMARA, JJ., concur.