(No. 43847.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. ARTHUR STRINGER *et al.,* Appellants.

*Opinion filed May 22, 1972.—Rehearing denied September 29, 1972.*

WARD, J., took no part.

HOWARD T. SAVAGE, of Chicago (HOWARD O.
EDMONDS, of counsel), for appellant.

WILLIAM J. SCOTT, Attorney General, of Spring-
field, and EDWARD V. HANRAHAN, State's Attorney, of
Chicago (JAMES B. ZAGEL, Assistant Attorney General,
and ROBERT A. NOVELLE and JAMES E. STERNIK,
Assistant State's Attorneys, of counsel), for the People.

MR. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

A Cook County circuit court jury found defendants, Arthur Stringer and Richard Taylor, guilty of murder and armed robbery, and each was sentenced to a term of 50 to 100 years imprisonment. The appellate court affirmed *(People v. Stringer, 129 Ill.App.2d 251)*, and we granted leave to appeal. We affirm.

Defendants urge that the pretrial confrontation between defendants and the identifying witnesses was so unnecessarily suggestive as to violate due process, that the evidence was insufficient to establish guilt beyond a reasonable doubt, and that the refusal to give defendants' jury instruction on identification was prejudicial error.

At approximately 5:15 A.M. on July 16, 1966, Henry J. Dority was robbed at his newsstand at the southeast corner of the intersection of 53rd Street and Indiana Avenue in Chicago, and then fatally shot as he pursued the two assailants west on 53rd Street. The following November, Perry Smith and Carl Dunbar, who allegedly witnessed the incident, identified defendants as the offenders through police photographs, with Dunbar recognizing only Taylor. Subsequently, on November 14, 1966, the defendants, who had been incarcerated under unrelated indictments, were placed in a six-man lineup and again identified by the two witnesses. Thereafter in a detention room the defendants were informed by Officers Fitzgerald and Marin that they had been identified in connection with a murder and robbery; whereupon, according to the officers, Stringer shouted, "Okay, okay, I killed him, let's get it over with," and also stated that he had used a .32 automatic pistol which he had left with a friend whose identity he refused to disclose. When inquiry was made as to the amount of money taken, Stringer asked Taylor, "How much did we get," but received no answer. Stringer refused to give a written statement.

The defendants filed pretrial motions to suppress Stringer's oral statement and to suppress the identification testimony of the witnesses to the lineup. The former motion was denied except as to that portion relating to Taylor. The motion to suppress identification testimony was denied. The defendants' first contention is that the surrounding circumstances establish that the pretrial lineup confrontation between themselves and the witnesses was so unnecessarily suggestive and conducive to mistaken identification as to be a denial of due process, and that the opportunity for State's witness Perry Smith to view the offenders at the scene of the crime was not of sufficient adequacy to establish an independent origin for Smith's in-court identification of the defendants.

The record indicates that the four individuals who appeared in the lineup with the defendants were from narcotics court, were slovenly dressed, had long hair, looked like "whiskey heads," and were variously estimated to range in height from 5 feet 4 inches to 5 feet 11 inches. The defendants were neatly dressed, had short haircuts and were about 6 feet tall. Defendant Stringer testified that prior to the lineup he saw two individuals, whom he subsequently learned were Smith and Dunbar, look into the room where he and Taylor were seated handcuffed to chairs. Dunbar, who was called by the defense at trial, testified that just prior to the lineup he and Smith were taken past a room and saw the backs of two men whom a police officer identified as the defendants. Officer Marin testified that he and Officer Fitzgerald, who were in charge of the lineup, did not take the identifying witnesses past the room where the defendants were held prior to the lineup nor point out the defendants to them. Dunbar also related that while he and Smith were being driven to the lineup the police officers indicated that they were "pretty sure" they had the men.

Perry Smith testified for the State that on the morning of the crime, while returning from work, he was

walking south on Indiana Avenue and that as he reached a point in front of a store on the northwest corner of the intersection of Indiana Avenue and 53rd Street he heard Dority, whom he knew, shouting, "Holdup, holdup, holdup, they are robbing me, they are robbing me." Smith testified that he stopped and looked across the avenue to the newsstand, that after "about three or four minutes" the defendants ran across the avenue and west on 53rd Street chased by Dority and that after running a short distance Taylor turned and fired the fatal shot; that Smith then turned and ran north. Smith described some of the clothing worn by the defendants at the scene and testified that he had looked at and remembered the defendants' faces. He also stated that he recalled seeing Stringer at 51st and Indiana prior to the morning in question but later testified that Taylor was the one he remembered seeing in the area. Smith testified that he first related his story to the police when Officer Fitzgerald came to his home in early November during a neighborhood canvas, that he was there shown 6 to 9 photographs from which he identified the defendants, and that he had not come forward sooner because of fear for his safety. Smith also testified to again identifying the defendants at the lineup but denied having seen or having told anyone he had seen the defendants in a small room just prior to the lineup. He also identified the defendants in court.

John McGarry, who had earlier represented the defendants, testified that in a signed, written statement taken February 16, 1967, Smith had said he saw the defendants alone just prior to the lineup and also that Smith had told him apparently conflicting stories as to when he first identified the photographs. McGarry, however, also testified that Smith never stated that he was unable to identify the defendants.

Carl Dunbar testified for the defense that he and two others were changing a flat tire in an alley located just west of Indiana Avenue and were a short distance from 53rd

Street when he heard a gunshot and then saw two men run past the alley with one of them shouting, "Come on, come on, I got it." While his testimony as to identification is somewhat equivocal, a fair summary is that he admitted to having originally identified Taylor's photograph as one of the assailants and to having identified Taylor at the lineup, but was unable to identify Stringer. At trial, however, Dunbar was unable to state that the defendants were the two men he had seen on the morning in question.

Since the trial court, in denying the pretrial motion to suppress identification, has here found that Smith's identification of the defendants was based on factors independent of the lineup and its surrounding circumstances, and untainted thereby, our concern is whether those findings are contrary to the manifest weight of the evidence. In our opinion they are not. It is uncontradicted that Smith observed the offenders for three to four minutes in the early daylight and later was able to identify the defendants from police photographs. His identification was not undermined, and such inconsistencies and discrepancies as exist are largely questions of credibility which were resolved against defendants. Accordingly, we hold that Smith's in-court identification was admissible inasmuch as its origin was independent of any allegedly suggestive pretrial confrontation. *People v. Nelson, 40 Ill.2d 146; People v. Blumenshine, 42 Ill.2d 508.*

The defendants also argue that the evidence was insufficient to establish their guilt beyond a reasonable doubt in that Smith lacked credibility, his identification testimony was weak and the mother of each defendant testified that her son was home asleep at the time in question. We cannot agree, for "[w]e may not substitute our judgment for that of a jury on questions involving the weight of the evidence or the credibility of the witnesses [citations], and we will not reverse a criminal conviction unless the evidence is so improbable as to raise a reasonable doubt of guilt." *(People v. Mills, 40 Ill.2d 4, 19;*

*accord, People v. Nicholls, 44 Ill.2d 533.)* "It is also undisputed in Illinois that where the identification of the accused is at issue, the testimony of one witness is sufficient to convict, even though such testimony is contradicted by the accused, provided the witness is credible and he viewed the accused under such circumstances as would permit a positive identification to be made. *(People v. Brinkley, 33 Ill.2d 403; People v. Washington, 26 Ill.2d 207; People v. Mack, 25 Ill.2d 416; People v. Cox, 22 Ill.2d 534.)" (People v. Watkins, 46 Ill.2d 273, 281; accord, People v. Catlett, 48 Ill.2d 56.)* In this case Smith observed the assailants from across the street during daylight, he described their clothing and was able to identify them in police photographs and at trial. The testimony as to Stringer's oral admission was unrebutted. Defense witness Carl Dunbar admitted having initially identified Taylor as one of the assailants. The evidence is not so "unreasonable, improbable or unsatisfactory as to leave a reasonable doubt of the defendant[s'] guilt" *(People v. Scott, 38 Ill.2d 302, 306),* and the jurors were in a more advantageous position than we to assess the credibility of the witnesses.

Finally defendants argue that the trial court's refusal to tender their identification instruction improperly prevented them from instructing the jury on their theory of the case, *i.e.,* erroneous identification. Defendant's Instruction No. 13 read as follows:

"The Court instructs the jury that in determining whether or not the defendant has been identified as the person who committed the offense charged against him, if any such offense was committed, you must consider all the testimony in the case, both that for the prosecution and that for the defendant, considering [*sic*] the means of identification; the circumstances under which he was identified; the opportunity for identifying the said defendant; the influence brought to bear on persons claiming to identify defendant, if any such influence existed; the description of his apparel as stated by the witness, if any such was stated; and the probabilities or

improbabilities that it was the defendant; and, if after so judging and weighing the testimony you are not satisfied beyond all reasonable doubt that the defendant has been correctly identified as the person who committed the offense as charged in this indictment, if any was committed, it will be your duty to find the defendant not guilty. On the other hand, if the State proves from all the evidence beyond all reasonable doubt that the defendant has been correctly identified, it will be your duty to find the defendant guilty."

It is our opinion, however, that the jury was otherwise adequately instructed on the subject matter of the refused instruction and therefore error did not occur. (*People v. Smith, 47 Ill.2d 528; People v. Fox, 48 Ill.2d 239.*) The first portion of defendants' instruction may be fairly characterized as paraphrasing the defendants' instruction on the credibility of witnesses, and the latter half of the instruction was concisely covered in the defendants' instruction on the State's burden of proof.

The judgment of the circuit court of Cook County is accordingly affirmed.

*Judgment affirmed.*

MR. JUSTICE WARD took no part in the consideration or decision of this case.