THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* SAMUEL HUGHES, Defendant-Appellant.

First District (4th Division)    No. 77-390

Opinion filed November 23, 1977.

James J. Doherty, Public Defender, of Chicago (Judith A. Stewart, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Michael E. Shabat, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

Following a bench trial, defendant, Samuel Hughes, was convicted of theft of property less than $150 in value (Ill. Rev. Stat. 1975, ch. 38, par. 16—1(a)(1)), and he was sentenced to the House of Correction for 7 months in a work release program. Defendant contends the evidence was not sufficient to prove his guilt beyond a reasonable doubt.

The complaining witness, Jeanette Dobson, testified that about 8 p.m. on November 24, 1975, she got off a bus on the far south side of Chicago to attend a wake. A man, identified as defendant, walked toward her on the street, grabbed her purse and continued to walk in the opposite

direction. Complainant turned and asked defendant to give back her door keys and identification, but defendant told her to put her money on the ground and keep walking. Complainant then went to a nearby house to summon police as defendant walked away.

She gave a report of the incident to police while touring the area with them for several minutes in an attempt to locate the assailant. She described her assailant as 5 feet 8 inches in height and weighing 160 pounds. He was wearing a dark jacket and trousers and a ski hat. She said the jacket defendant wore at trial was not the one he wore at the time of the incident in question.

The police then drove complainant to her original destination, which was a house owned by Grace Andrews. She entered this house about 8:20 p.m. and sat in the living room. About 8:30 p.m. complainant saw defendant enter the front door and walk to another area of the house. Defendant was wearing the same clothing that he wore when he took her purse. She followed defendant to get a good look at him before he left. When defendant returned to the house, he changed coats. The police were summoned and defendant was arrested when he came out of the house.

Officer William Campbell testified he arrested defendant between 8 and 8:30 p.m. and $29 was found on his person. While the arrest report listed the time of arrest at 11:05 p.m., a supplemental report set the time of the incident at 8:15 p.m.

During defense counsel's unsuccessful motion for a directed verdict, counsel noted that defendant was larger than the description of the assailant which complainant gave to police.

Testimony was then offered on behalf of defendant to establish his alibi. Stanley Bond testified that he was with defendant from mid-afternoon until they arrived at the Andrews' residence at 9:20 p.m. on the night of the occurrence. Defendant was wearing the same jacket that night as he wore at trial.

Byron Lawson testified defendant and Bond arrived at his house about 4 p.m. and left at 8 p.m. This location was a substantial distance from the scene of the theft.

Glorius Morgan, Lawson's mother-in-law, testified that defendant and Bond arrived at the Lawson residence at 4 p.m. where they repaired her refrigerator. She was positive that the day they came was November 24, 1975, because that was the date she expected them to make the repair. This witness claimed that defendant left about 8 p.m., but she then indicated he departed about 30 minutes after it became dark.

Defendant's mother testified that her son and Bond arrived at her house about 8:50 p.m. Defendant cleaned her floor and then left about 9:30 p.m.

Earl Andrews, whose father had died, testified that defendant and

Bond arrived at the Andrews' house between 9:30 and 10 p.m. This witness and defendant went to a liquor store and returned about 10:10 p.m. Andrews stated that defendant changed his jacket at the house.

Defendant denied commission of the offense and corroborated the testimony of the alibi witnesses. He said that he and Bond left the Lawson residence and proceeded directly to defendant's house, arriving about 9:10 p.m. After obtaining $35 from his sister, he went to the Andrews' residence at 9:30 p.m. He was wearing the same jacket he wore at trial. He did not see the complainant at the Andrews' house during the time he played with his son or before he went to the liquor store. Upon his return from the store, he changed his jacket and put on a full-length black and white coat. Thereafter, he was arrested when he went outside apparently on his way to the home of his sister's girlfriend.

Defendant argues that he was not proved guilty beyond a reasonable doubt. He predicates his contention on several bases. He asserts that the complainant did not note any distinctive features of her assailant and provided only a general physical and clothing description. Defendant also says that he was 6 feet 1 inch in height and weighed 185 pounds which is substantially dissimilar to the description she provided police, and he notes that no proceeds of the theft were traced to him. He indicates the complainant's credibility is lessened by her claim that defendant was wearing a coat at the Andrews' house which was different from the one he wore at trial when defense witnesses said the coat was the same one worn by defendant on both occasions. He further suggests complainant's credibility was diminished because of the discrepancy concerning the time of his arrest. Finally, he relies on his alibi witnesses to negate any evidence of guilt.

■■ The fact complainant gave police only a "general" description of her assailant does not negate the validity of her identification of defendant. (*People v. Witherspoon* (1975), 33 Ill. App. 3d 12, 19-20, 337 N.E.2d 454.) The identification testimony of a single credible witness is sufficient to sustain a conviction if such witness viewed the defendant under circumstances allowing for a positive identification. (*People v. Yarbrough* (1977), 67 Ill. 2d 222, 226, 367 N.E.2d 666.) The record does not show and defendant does not claim that complainant's ability to view her assailant was unsatisfactory. Rather, the record shows the complainant saw defendant as he walked toward her and she then spoke to him after he took her purse in order to regain her house keys and identification.

■■ While defendant asserts that his physical stature was substantially at variance with complainant's description, the record does not substantiate his claim as to the precise difference. The only mention of defendant's height and weight was the reference by his counsel that

defendant was larger than the assailant whom complainant described. Defendant relies on the presentence report compiled by a probation officer after defendant's conviction, which he implies contains precise reference to his height and weight. The admissibility of such matters as evidence at trial without more would seem improper. However, we need not speculate on defendant's exact physical size. We conclude the trial court was in the better position to ascertain whether any variance of defendant's actual size and that described by complainant affected the weight to be given the identification testimony. *People v. Chatman* (1975), 32 Ill. App. 3d 506, 510, 336 N.E.2d 153.

■■ Moreover, the fact no identifiable proceeds of the theft were found on defendant would not raise a sufficient doubt of guilt. *People v. Dayani* (1973), 16 Ill. App. 3d 615, 619, 306 N.E.2d 488.

■■ Similarly, the dispute as to the time of defendant's arrest and the coat he was wearing present a question of credibility between the defense witnesses and the testimony of complainant and arresting officer. The latter indicated he responded to complainant's call and arrived between 8 and 8:30 p.m. when defendant was identified. While his police report suggested the arrest occurred at 11 p.m., such reference may have referred to the police procedure in processing defendant after the arrest. Any conflict in this testimony or testimony regarding the jacket defendant wore when he arrived at the Andrews' house was for the trial court to resolve. (*People v. Akis* (1976), 63 Ill. 2d 296, 298-99, 347 N.E.2d 733.) The record presents no bases to disturb the trial court's findings.

■■ Defendant has strongly urged that his alibi witnesses establish a reasonable doubt of guilt. If the testimony of Officer Campbell and complainant concerning the time of defendant's arrest is believed, much of the alibi testimony is significantly discredited. The trial court rejected the alibi testimony, and we cannot say this conclusion was error. *People v. Jackson* (1973), 54 Ill. 2d 143, 149, 295 N.E.2d 462.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

DIERINGER, P. J., and ROMITI, J., concur.