THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JUAREZ SANDERS, Defendant-Appellant.

First District (1st Division)    No. 78-1922

Opinion filed August 18, 1980.

James J. Doherty, Public Defender, of Chicago (Anthony F. Rusnak and Suzanne M. Xinos, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, James S. Veldman, and Thomas A. Gibbons, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

After a jury trial, defendant Juarez Sanders was found guilty of deviate sexual assault, aggravated kidnapping and indecent liberties with a child. Defendant was sentenced to 10 to 15 years imprisonment. Defendant appeals contending that he (1) was not proved guilty beyond a reasonable doubt because identification evidence was vague, doubtful and uncertain, and (2) was denied a fair and impartial jury trial when the trial court repeatedly refused written questions submitted by defendant for inclusion in *voir dire* by the court.

The victim, Nehru Dawson, was 15 years old at the time of the incident. Dawson testified that on March 6, 1977, at approximately 11:45 p.m. he was walking down 63d Street in Chicago, Illinois, toward his home at 6152 South Carpenter. At 63d Street and Halsted Avenue he noticed a man following him. Dawson turned around and just as he was about to break into a run, the man grabbed him around the neck. The man put a 2-inch knife in front of Dawson's face and told him to shut up and run. Dawson offered to give the man his wallet. Defendant did not say anything but dragged Dawson toward an alley. The alley was lit by street lights. Defendant pushed Dawson into a burned-out garage which had no doors. Light was coming from the south wall of the garage. Dawson saw defendant's face, coat, shirt and pants. He viewed defendant's face for about 30 seconds during the incident. Dawson testified that defendant was wearing a long "salt and pepper" coat.

Defendant went through Dawson's pocket and took out his wallet. Defendant looked through the wallet and set it on the windowsill. Defendant then took Dawson's coat, searched it and placed it on the windowsill as well. While defendant was doing this, Dawson had his back to the south wall and defendant was facing him.

Next defendant started putting his hands all over Dawson's body. He was about a foot away from Dawson, still facing him. Defendant then unzipped his pants and pulled out his penis. He told Dawson to "jaculate" him. Dawson refused, and defendant put a knife up to his neck and told him he had better do it. Dawson complied. At some point, defendant told Dawson to stop, shoved him against the wall and started masturbating himself. After awhile, defendant ceased masturbating and told Dawson to get on his knees. When Dawson refused, defendant put the knife to Dawson's neck. Defendant told Dawson to put his mouth on defendant's penis. When Dawson did not do this, defendant again put the knife against his neck and Dawson knelt down and complied with defendant's order. Dawson tried to take his head off defendant's penis, but defendant kept shoving his head onto it.

Dawson asked if he could get up and defendant let him. Defendant then unzipped Dawson's pants, pulled them down and started putting his

hands all over Dawson's body. Defendant told Dawson to go get a bag. Dawson got one from the corner of the garage and defendant wiped himself with it. Defendant zipped up his pants and buttoned his coat. Dawson asked if he could pull his pants up, but defendant said he could not. Defendant threw the bag on the ground where there were a lot of other little bags and left the garage. He walked straight out and down a gangway across from the garage.

Dawson pulled up his pants, gathered his belongings and ran onto 63d Street. He observed a squad car and ran up to it. He told the police officers that a man made him suck his penis. He got into the squad car and the officers drove him back towards the garage.

Dawson testified that he told the police officers that defendant was tall, had hair a bit longer than his own and was wearing a long coat. As he drove with the officers, Dawson observed defendant walking in a parking lot about a block and a half west of the garage. Dawson pointed defendant out to the officers and told them that defendant was the man who had made him perform the acts in question. When they arrived in the parking lot, the police officers told defendant to stop and they arrested him. They brought defendant to the side of the car, and he bent over. Dawson recognized defendant's face as that of his assailant. He also recognized defendant's coat.

Officer James Stephens, one of the police officers in the squad car which picked up the victim, was patrolling the area of 63d and Morgan Streets on the evening of March 6, 1977. He testified that when he first observed Dawson, the youth was very excited and agitated. Officer Stephens asked him what his problem was and Dawson replied that a man made him suck his penis. Officer Stephens instructed Dawson to get into the squad car and then went in the direction Dawson pointed out as where the incident occurred. He asked Dawson for a general description and Dawson said that the man was tall and was wearing a dark gray coat. They drove about 50 to 75 feet when Dawson pointed out defendant walking in a parking lot. The vehicle was approximately 400 to 500 feet from defendant at this time. Officer Stephens testified that defendant was wearing a long gray coat, pants and no hat. The officers instructed Dawson to lie down in the car and then proceeded toward defendant. Officer Stephens frisked defendant, but found no weapon. He also searched the area on foot, but did not find a weapon. The officers placed defendant under arrest and called a squadrol to pick him up.

The police officers and Dawson then went back to the garage. Officer Stephens testified that the lighting in the alley was very good. The light nearest to the garage was approximately 20 feet north of the garage on the same side of the alley. The light provided illumination on the front part of the garage, from the south wall to the southwest corner. Officer

Stephens testified that while he was inside the garage, he could see the faces of the other people who were in the garage.

Prior to trial, the court conducted *voir dire* examination of the jurors, noting that the Supreme Court Rules authorized it to do so. Defense counsel requested that they be allowed to ask questions of each prospective juror under section 115—4(f) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 115—4(f)). The court stated that his legislative provision was declared unconstitutional and in derogation of the Supreme Court Rules. Defense counsel requested that, at a minimum, the court ask every question which was submitted to it in written form. Defense counsel submitted 103 questions. The prosecution noted that they had also submitted questions, and they requested the court use its discretion in selecting those questions the court deemed proper. The court stated that it had looked at both lists of questions and that one of the reasons why it had adopted the policy of conducting the *voir dire* examination itself was because when counsel conducted the *voir dire* examination the questions asked were duplicitous and redundant. Defense counsel requested that, if the court would not allow them to ask individual jurors questions, they be permitted to review the submitted questions with the court. The court stated that it did not find this to be necessary. The court stated that after it had conducted the *voir dire* examination, if defense had any additional questions which they wanted propounded, defense counsel could at that time request a side bar and the court would take any additional questions into consideration.

The court began the *voir dire* examination by asking the entire group of prospective jurors several questions regarding various propositions of law and procedure relevant to the instant case. The court then addressed the jurors in panels of four and asked each juror questions concerning that person's background, occupation, hobbies, social organizations, reading and viewing habits, their ability to be fair to both sides and their use of common sense. During *voir dire* examination, the court asked many of the questions submitted by defense counsel. The court also allowed three side bars which defense counsel requested. At these side bars, the court considered defense counsel's requests that the prospective jurors be questioned about (1) their attitudes toward a person testifying under oath; (2) whether they would wait for all the evidence to be completed before reaching a verdict; and (3) whether they had ever been mistaken about someone's identity. The court questioned the prospective jurors individually with regard to only the first two of defense counsel's additional inquiries. The court did not ask the panels already selected these two questions. No inquiry was made of the jurors either individually or collectively as to any possible biases they may have held against defendant.

Defendant first contends that he was not proved guilty beyond a reasonable doubt because weak, doubtful and uncertain identification evidence raised a reasonable doubt of his guilt.

■■ ■ The weight and credibility to be given a witness' testimony is a determination for the jury as the trier of fact, and unless that determination is so unreasonable, improbable or unsatisfactory as to raise a reasonable doubt as to guilt, a conviction will not be reversed. (*People v. Stringer* (1972), 52 Ill. 2d 564, 289 N.E.2d 631; *People v. Nicholson* (1978), 61 Ill. App. 3d 621, 377 N.E.2d 1063; *People v. Owens* (1977), 46 Ill. App. 3d 978, 361 N.E.2d 644.) A conviction cannot be deemed to be sustained by evidence beyond a reasonable doubt if the identification of the accused was vague, doubtful and uncertain. (*People v. Gardner* (1966), 35 Ill. 2d 564, 221 N.E.2d 232; *People v. Reed* (1968), 103 Ill. App. 2d 342, 243 N.E.2d 628; *People v. Martin* (1968), 95 Ill. App. 2d 457, 238 N.E.2d 205.) However, a single identifying witness has been held sufficient to sustain a conviction provided the witness is credible and he viewed the accused under such circumstances as would permit a positive identification to be made. (*People v. Stringer* (1972), 52 Ill. 2d 564, 289 N.E.2d 631; *People v. Gardner* (1966), 35 Ill. 2d 564, 221 N.E.2d 232; *People v. Hughes* (1977), 55 Ill. App. 3d 359, 371 N.E.2d 41; *People v. Owens* (1977), 46 Ill. App. 3d 978, 361 N.E.2d 644; *People v. Bennett* (1973), 9 Ill. App. 3d 1021, 293 N.E.2d 687; *People v. Reed* (1968), 103 Ill. App. 2d 342, 243 N.E.2d 628.) In addition, the fact that only a "general" description of the accused was given to the police does not negate the validity of the identification. *People v. Hughes* (1977), 55 Ill. App. 3d 359, 371 N.E.2d 41.

We find that the record does not support defendant's claim. Dawson testified that he was able to view defendant's face for a period of 30 seconds while the two were in the garage. He stated that the light in the garage came from the south wall and during the incident Dawson had his back to the wall with defendant facing him. In addition, Officer Stephens testified that the lighting in the alley was very good and that it provided illumination on the front part of the garage from the south wall to the southwest corner. We believe that the identification here is positive. Furthermore, the validity of that identification is not negated by the fact that when Dawson first spoke with the police officers he gave them only a general description of his assailant.

We find that the evidence regarding Dawson's identification of defendant as his assailant was sufficient to prove defendant's guilt beyond a reasonable doubt.

Defendant's second contention is that he was denied a fair and impartial jury trial when the trial court refused written questions

submitted by defendant for inclusion in the *voir dire* examination conducted by the court.

■ The only legitimate purpose of a *voir dire* examination is to assure the selection of an impartial jury. (*People v. Jackson* (1977), 69 Ill. 2d 252, 371 N.E.2d 602.) Under Supreme Court Rule 234 (Ill. Rev. Stat. 1977, ch. 110A, par. 234), the trial court has the primary responsibility in conducting the *voir dire* examination. Rule 234 also provides that the trial court "may permit the parties to submit additional questions to it for further inquiry if it thinks they are appropriate * * *." As the language of the rule indicates, the trial court has discretion in determining whether or not additional questions will be allowed to be submitted for further inquiry (*People v. Dallas* (1980), 85 Ill. App. 3d 153, 405 N.E.2d 1202; *People v. Nicholson* (1978), 61 Ill. App. 3d 621, 377 N.E.2d 1063), and a conviction will not be reversed unless the court has so abused this discretion that the defendant was prevented from intelligently exercising his right to challenge the prospective jurors. (*People v. Nicholson* (1978), 61 Ill. App. 3d 621, 377 N.E.2d 1063.) No such abuse has been shown here.

■ In the instant case, the court conducted a thorough *voir dire* examination and was very cooperative with defense counsel. During the course of the *voir dire* examination, the court asked many of the questions submitted by defense counsel and in addition granted defense counsel's requests for three side bars during which defense counsel suggested that the prospective jurors be questioned about (1) their attitudes toward a person testifying under oath; (2) whether they would wait for all the evidence to be completed before reaching a verdict and (3) whether they had ever been mistaken about someone's identity. The court accepted defense counsel's suggestions with regard to the first two questions and propounded these questions to each prospective juror individually. Under these circumstances, it cannot be said that the trial court abused its discretion in not including all defendant's written questions in the *voir dire* examination.

The judgment and sentence of the circuit court of Cook County are affirmed.

Affirmed.

GOLDBERG, P. J., and McGLOON, J., concur.