THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
WOODROW RICHARD, Defendant-Appellant.

First District (1st Division)    No. 79-959

Opinion filed September 8, 1980.—Rehearing denied September 29, 1980.

Emory Tate & Associates, and Brundage & Welch, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, James Veldman, and Edward M. Rubin, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

After a jury trial, defendant Woodrow Richard was found guilty of armed robbery and sentenced to not less than four and not more than 10 years imprisonment. Defendant appeals, contending that (1) the trial judge committed reversible error when he denied defendant's motion to suppress the identification evidence because the lineup from which he was identified was unnecessarily suggestive; (2) the trial court erred in allowing the State to amend its witness list and sanctions should have been imposed upon the State for failure to comply with Supreme Court Rule 412 (Ill. Rev. Stat. 1979, ch. 110A, par. 412); (3) he was not proved guilty beyond a reasonable doubt; and (4) he was prejudiced by the State's comments during closing argument (a) referring to defendant's failure to testify in his own behalf, and (b) insinuating that defense counsel had been underhanded, deceitful and tricky in conducting the defense.

Prior to trial, the court below held a hearing on the defense motion to suppress the identification of defendant by the complainant, Lawrence Baker. Sergeant Keating of the Chicago Police Department testified that defendant was brought to the police station at Harrison and Kedzie Streets in Chicago, Illinois, on November 10, 1976. During his investigation of a separate crime, Keating obtained information connecting defendant to the robbery of Baker. Sergeant Keating called Baker in the early morning hours on November 11, 1976, and asked him to come to the police station to view a lineup. Baker arrived at the police station at about 5 a.m. When Baker

came to the second floor of the police station, he was received by Sergeant Keating and while on the second floor Baker spent his time in Sergeant Keating's office. At about 5:10 a.m., Sergeant Keating conducted a lineup which included defendant and five other black men. Sergeant Keating accompanied Baker down the stairway to the lockup on the first floor where the lineup was held. Sergeant Keating estimated the weight of the individuals participating in the lineup: subject one—145-150 pounds; subject two—165 pounds; subject three—145 pounds; subject four—175 pounds; subject five—150-160 pounds; and subject six—150 pounds. Defendant was subject four. Keating testified that Baker did not see defendant prior to the lineup. The sergeant did not remember seeing defendant's mother, Ernestine Patton, on the second floor at the time Baker arrived at the station.

Baker testified that he received a telephone call at about 3:30 a.m. on November 11, 1976, from Sergeant Keating, asking him to come to the police station. Baker arrived at the station at about 5:10 a.m. He went to the station's second floor, where he met Sergeant Keating and went into Keating's office. Baker saw only police officers on the second floor. Baker stated that he did not see defendant or any of the other participants in the lineup prior to viewing the lineup. Except for standing for about one minute at the second floor desk, Baker spent the entire time at the station prior to the lineup in Keating's office with the door closed. Baker was taken to view the lineup at approximately 5:30 a.m. While walking to the lineup, his attention was not drawn to any black males.

Ernestine Patton, defendant's mother, testified that she went to the police station at about 7 p.m. on November 10, 1976. She later left the station and returned at 12:15 a.m. She saw defendant on the second floor in a closed room. She stated that Baker came to the station's second floor about 3:30 or 4 a.m. Patton said defendant was brought out of the room where he was being held and led past Baker. Defendant was about 10 feet from Baker. Defendant was taken into a room and, when he emerged, he was again led in front of Baker. Baker was talking to a policeman when defendant was led past him. Patton said she did not know for a fact whether Baker saw defendant. She said that nothing was done during the lineup to bring Baker's attention to the fact that her son was in the lineup.

Defendant testified at the hearing on the motion to suppress the identification that he was arrested on November 10, 1976, and taken to the police station at Harrison and Kedzie Streets, in Chicago, Illinois. Defendant stated that prior to the lineup he saw Baker at about 3:30 a.m. standing at the second floor desk while he was being taken to be photographed. Defendant stated that he was about 30 to 40 feet from the desk. Defendant said Baker was speaking with a police officer and that both Baker and the police officer looked up at him. After the pictures were taken, defendant

testified he was led back the same way as he had come previously and that he again encountered Baker. Defendant stated that no one pointed him out when he walked past Baker. Defendant stopped for two or three minutes and stood there staring at Baker. Defendant said he had never seen Baker before that time.

Officer Leonard Sykes, of the Chicago Police Department, testified that Baker arrived at the police station at approximately 5 a.m. Defendant was kept in an interview room on the second floor, with the door closed. At about 2 a.m., Sykes took defendant to be photographed. Baker was not at the police station at that time. At about 5 a.m., Sykes took defendant to the lineup. Prior to the lineup, no one showed defendant to Baker. Sykes prepared the lineup, selecting five other individuals within defendant's age bracket, complexion and physical fitting.

Following arguments by both sides, the trial court denied defendant's motion to suppress the identification.

On September 6, 1977, the State asked the court for leave to amend their answer to discovery to add the name of a Mrs. Hill. The assistant State's attorney said he was not aware of her existence until he spoke with Sergeant Keating prior to the motion to suppress the identification. The court allowed the name of Mrs. Hill to be added over defense counsel's objection.

At trial, Baker testified that on July 30, 1976, he was a cement truck driver employed by Edmier, Incorporated. On that date, he was delivering concrete at 2243 Kildare, in Chicago, Illinois. He arrived at that address at approximately 2:30 p.m., and he proceeded to unload a load of concrete in the alley. He unloaded the concrete for about an hour. Baker collected $205 in cash for the concrete and placed the money in his shirt.

Baker proceeded to drive down the alley so he could make a turn and return to Edmier when he noticed an individual wearing a red bandana around the top of his head standing near the end of the alley. As Baker approached the end of the alley, he reached a point where, because of the size of his truck and the position of a telephone pole, it was necessary to stop and back up to make the turn. As he started to back up, the person he had seen earlier came up to his truck. Baker identified defendant in open court as the man he saw in the alley. Defendant came up to the side of the truck with a cigarette in his hand and asked Baker if he had a light. Baker replied that he did not smoke, but the truck had a lighter. While talking to defendant, Baker was looking directly down at his face. When the lighter was ready, Baker handed it to defendant. Defendant lit the cigarette and returned the lighter. Baker then put the truck in reverse so he could put the truck in position to leave the alley. He checked the rear view mirror and saw defendant pointing a gun at him. Defendant told Baker to get out of the truck.

Baker came down and faced defendant. Defendant told Baker to turn around towards the truck. When Baker turned, defendant put the gun to the back of his head. Defendant then began to go through Baker's pockets. Baker's car keys and change were taken. Defendant then reached into Baker's shirt pocket and removed the $205. Defendant told Baker not to move and ran down the alley. Baker climbed back into the truck and watched defendant run into a vacant lot.

Baker contacted the police and told them he had been robbed. He described defendant as a male Negro, about five feet 10 to six feet, approximately 20 to 25 years of age, kind of stocky, 170 to 180 pounds, medium complexion, brown hair and brown eyes. Baker also told the police that his assailant wore a red bandana around his head, dark pants and a white "T" shirt.

Baker testified that on November 11, 1976, he identified defendant out of a lineup as the man who robbed him on July 30, 1976. Baker stated no one told him which subject to choose.

Sergeant Robert Keating testified at trial that on November 11, 1976, he was working in the homicide office on the second floor at 3151 West Harrison Street, in Chicago, Illinois. During the course of investigating a homicide, he spoke with a Charles Hill and Hill's mother. He obtained information about recent robberies and checked police files on unsolved robbery cases that had occurred in July of 1976. Keating then telephoned Baker. Baker came to the police station and viewed a lineup, from which he identified defendant as the man who robbed him.

Mrs. Elizabeth Hill testified that she resided at 2227 South Kildare, in Chicago, Illinois, which is in the area where Baker was robbed. Mrs. Hill stated that on July 30, 1976, she was in the backyard of her home. At about 3:30 p.m., she noticed defendant running down the alley toward Ogden Avenue. She noticed defendant was carrying a bag. She did not tell police about the incident until November 10, 1976.

Officer Leonard Sykes, of the Chicago Police Department, testified that he organized the lineup viewed by Baker. He stated that suspects were kept out of Baker's view prior to the lineup. Baker was asked to make an identification after Sykes directed each individual in the lineup to go through different movements. Baker identified defendant.

Defendant first contends that the trial judge improperly denied defendant's motion to suppress Baker's identification of defendant because the lineup from which he was identified was unnecessarily suggestive and conducive to irreparable mistaken identification.

In order to be entitled to suppress identification testimony, the burden is on the defendant to prove that the pretrial procedures were so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law. (*People v. Blumenshine* (1969), 42 Ill. 2d

508, 250 N.E.2d 152; *People v. Harrison* (1978), 57 Ill. App. 3d 9, 372 N.E.2d 915.) After a careful review of the record in this case, we do not believe defendant has met this burden.

■■ Defendant first argues that the lineup was suggestive because while at the police station he and Baker encountered one another on two occasions prior to the lineup. However, although defendant and his mother both testified at the suppression hearing that defendant and Baker had seen one another at the police station prior to the lineup, Sergeant Keating and Baker testified that defendant and Baker did not have an opportunity to view one another because, among other things, Baker had not arrived at the police station at the time defendant and his mother said the viewing had occurred. It is the trial judge's function to determine the credibility of witnesses and the totality of circumstances at a hearing on a motion to suppress. (*People v. Carbona* (1975), 27 Ill. App. 3d 988, 327 N.E.2d 546, *cert. denied* (1976), 424 U.S. 914, 47 L. Ed. 2d 319, 96 S. Ct. 1114.) We will not disturb the lower court's ruling.

■■ Defendant also argues that the lineup was suggestive because the other participants in the lineup were of lighter weight than defendant. At the evidentiary hearing on the motion to suppress, Sergeant Keating testified as to his estimate of the weights of each of the six subjects participating in the lineup. His testimony indicates that defendant was the heaviest of the participants in the lineup. However, we do not find this weight difference sufficient to make the lineup unduly suggestive and conducive to irreparable mistaken identification.

■■ Furthermore, even if pretrial identification procedures are suggestive, an in-court identification is permissible if it has an origin independent of the tainted pretrial identification. (*People v. Patrick* (1972), 53 Ill. 2d 201, 290 N.E.2d 227; *People v. Huffman* (1980), 81 Ill. App. 3d 901, 401 N.E.2d 1211; *People v. Henderson* (1976), 36 Ill. App. 3d 355, 344 N.E.2d 239.) At the time defendant asked Baker for a light, Baker had an opportunity to look directly down at defendant's face. Baker again faced defendant when Baker alighted from the truck at defendant's command. He also saw defendant in his rear view mirror before defendant ordered him out of the truck. Considering the totality of circumstances, even assuming the lineup here was unduly suggestive and conducive to irreparable mistaken identification, we find there was a sufficient independent origin for Baker's in-court identification of defendant.

■■ Defendant's second contention is that (a) the trial court erred in allowing the State to amend its witness list and that (b) sanctions should have been imposed upon the State for failure to comply with Supreme Court Rule 412 (Ill. Rev. Stat. 1979, ch. 110A, par. 412). It is within the sound discretion of the trial court to admit testimony of unlisted witnesses where the State has not complied with discovery requests prior to trial. (*People v.*

*Steel* (1972), 52 Ill. 2d 442, 288 N.E.2d 355; *People v. Dees* (1977), 46 Ill. App. 3d 1010, 361 N.E.2d 1126. See *People v. Clements* (1980), 80 Ill. App. 3d 821, 400 N.E.2d 483.) Absent a showing by the accused of resulting prejudice and surprise, the trial court's determination to admit such evidence is not error. *People v. Dees.*

■■ The State had become aware of Mrs. Hill's existence just prior to the commencement of the hearing on defendant's motion to suppress the identification evidence and immediately subpoenaed her. The State moved to add Mrs. Hill's name to its witness list immediately after the trial court announced its decision to deny defendant's motion to suppress. The court allowed the State to amend its witness list to add Mrs. Hill's name, noting that the start of the evidentiary stage of the trial would not begin for another week and that this was not a case where defendant could claim surprise. Because defendant has not shown that he was either surprised or prejudiced, we find that the trial court did not abuse its discretion in allowing the State to amend its list of witnesses.

We also find that the trial court did not err when it did not impose sanctions on the State for failure to include Mrs. Hill's name in its initial list of witnesses. Because the State did not violate any discovery rule or order, the imposition of any sanctions pursuant to Supreme Court Rule 219(c) (Ill. Rev. Stat. 1979, ch. 110A, par. 219(c)) would be improper.

Defendant's third contention is that he was not proved guilty beyond a reasonable doubt. He argues that the evidence presented against him was unreliable in that Baker's identification of defendant as his assailant was weak, doubtful and uncertain and Mrs. Hill's testimony was incredible because of her bias against defendant.

It is the function of the jury to determine the credibility of witnesses, to weigh the evidence and draw reasonable inferences therefrom, and to resolve any conflicts in evidence. (*People v. Vriner* (1978), 74 Ill. 2d 329, 385 N.E.2d 671, *cert. denied* (1979), 442 U.S. 929, 61 L. Ed. 2d 296, 99 S. Ct. 2858.) A reviewing court will not reverse a criminal conviction unless the evidence is so improbable as to raise a reasonable doubt of defendant's guilt. (*People v. Vriner; People v. Stringer* (1972), 52 Ill. 2d 564, 289 N.E.2d 631.) We do not find that the evidence is so improbable as to raise a reasonable doubt of defendant's guilt.

Although a conviction cannot be deemed to be sustained by evidence beyond a reasonable doubt if the identification of the accused was vague, doubtful and uncertain (*People v. Gardner* (1966), 35 Ill. 2d 564, 221 N.E.2d 232; *People v. Reed* (1968), 103 Ill. App. 2d 342, 243 N.E.2d 628; *People v. Martin* (1968), 95 Ill. App. 2d 457, 238 N.E.2d 205), we find from Baker's testimony that his identification was positive.

■■ Furthermore, although one identifying witness is sufficient to sustain a conviction provided the witness is credible and he viewed the accused

under such circumstances as would permit a positive identification to be made (*People v. Stringer* (1972), 52 Ill. 2d 564, 289 N.E.2d 631; *People v. Gardner* (1966), 35 Ill. 2d 564, 221 N.E.2d 232; *People v. Hughes* (1977), 55 Ill. App. 3d 359, 371 N.E.2d 41; *People v. Owens* (1977), 46 Ill. App. 3d 978, 361 N.E.2d 644), here a second witness, Mrs. Hill, testified that while in her backyard on the date the crime occurred she noticed defendant running down the alley. Defendant argues that Mrs. Hill's testimony is incredible because she relayed the information which she subsequently testified to to the police while her son was being held for questioning about another crime. Her credibility, however, was for the jury. We find that defendant was proved guilty beyond a reasonable doubt.

Defendant's final contention is that he was prejudiced by the State's comments during closing argument (a) referring to defendant's failure to testify in his own behalf and (b) insinuating that defense counsel had been underhanded, deceitful and tricky in conducting the defense. We disagree.

The fifth amendment privilege against self-incrimination forbids comment by the prosecution on a defendant's failure to take the stand in his own behalf. (*Griffin v. California* (1965), 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229.) However, it is not improper for the prosecutor to refer to the fact that the testimony of the State's witnesses is uncontradicted, even though defendant is the only person who could have contradicted it (*People v. Hopkins* (1972), 52 Ill. 2d 1, 284 N.E.2d 283; *People v. Vinson* (1978), 61 Ill. App. 3d 684, 378 N.E.2d 348), as long as he or she does not comment in a manner that is " 'intended or calculated to direct the attention of the jury to the defendant's neglect to avail himself of his legal right to testify * * *.' " *People v. Burton* (1969), 44 Ill. 2d 53, 56, 254 N.E.2d 527, quoting *Watt v. People* (1888), 126 Ill. 9, 32, 18 N.E. 340.

Defendant asserts that the prosecutor's comments during closing argument referring to both Baker's and Mrs. Hill's testimony as "consistent," "unimpeached," "unrebutted" and without contradiction were prejudicial to defendant, in that they were an improper comment on defendant's failure to testify on his own behalf. No objection was made by defense counsel to any of the remarks. The issue consequently is waived. (*People v. Underhill* (1967), 38 Ill. 2d 245, 230 N.E.2d 837, *cert. denied* (1968), 391 U.S. 912, 20 L. Ed. 2d 651, 88 S. Ct. 1803; *People v. Vinson* (1978), 61 Ill. App. 3d 684, 378 N.E.2d 348.) However, even if not waived, the comments do not require reversal; they merely emphasized the uncontradicted character of the State's evidence and were not intended to direct the jury's attention to defendant's failure to testify. *People v. Hopkins*; *People v. Vinson*.

Defendant also contends he was prejudiced by the State's comments insinuating that defense counsel had been underhanded, deceitful and

tricky in conducting the defense. We find that the record does not support defendant's contention.

It is settled law that a prosecutor has wide latitude during closing argument (*People v. Weatherspoon* (1978), 63 Ill. App. 3d 315, 379 N.E.2d 847), and the trial court's determination as to the propriety of the argument will not be overturned on appeal absent a clear abuse of discretion. (*People v. Weatherspoon.*) While comments about defense counsel are not proper argument (*People v. Oliger* (1975), 32 Ill. App. 3d 889, 336 N.E.2d 769), a verdict will not be disturbed on review where such remarks did not constitute a material factor in the conviction (*People v. Walker* (1975), 29 Ill. App. 3d 838, 331 N.E.2d 267)· or result in substantial prejudice to the accused. *People v. Davis* (1976), 38 Ill. App. 3d 411, 347 N.E.2d 818; *People v. Oliger* (1975), 32 Ill. App. 3d 889, 336 N.E.2d 769.

■■ After a review of the record, we conclude that the prosecutors' comments in closing argument did not insinuate that defense counsel had been underhanded, deceitful and tricky in conducting the defense. Defendant points out that the prosecutors stated that defense counsel had attempted to weaken the State's case by way of "innuendos." Such comments cannot be said to amount to accusations that defense counsel had been underhanded, deceitful and tricky. But even if improper, we do not find that they constituted a material factor in defendant's conviction or resulted in substantial prejudice so as to require reversal of his conviction.

The judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

GOLDBERG, P. J., and McGLOON, J., concur.